181 So.2d 175 (1965)
Clenton L. MORGAN and Ruth B. Morgan, Appellants,
v.
GENERAL INSURANCE COMPANY OF AMERICA, a corporation, Appellee.
No. G-332.
District Court of Appeal of Florida. First District.
December 16, 1965.
Rehearing Denied January 12, 1966.
Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellants.
Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
STURGIS, Judge.
Appellants brought a tort action against the owners of Blue Flame Gas Company, not parties to this appeal, to recover damages resulting from an explosion and fire *176 which destroyed appellants' home and contents. The fire loss was covered by an insurance policy issued by appellee, which was permitted to intervene as a party plaintiff while settlement negotiations were pending between appellants and Blue Flame Gas Company for the purpose of protecting its (appellee insurer's) right of subrogation under the terms of the insurance policy.
Appellee's subrogation claim derives from these facts: Prior to the institution of this suit appellants sued appellee in the state court to recover on the insurance policy. Appellee removed that cause to the United States District Court where it filed an answer admitting liability and tendered $11,175.31 into the registry of that court, contending that said amount was the extent of its liability under the policy. That suit is not involved on this appeal and the issue therein is moot due to the fact that pursuant to a settlement agreement and stipulation entered by all parties to this cause Blue Flame Gas Company paid into the registry of the state court, for distribution as hereinafter stated, an amount in excess of the amount claimed by appellants under the policy. This appeal involves a dispute between appellants and their insurer (appellee) over the distribution of the settlement proceeds derived from Blue Flame as made by the order appealed, which order was entered pursuant to said stipulation in pertinent part providing:
(1) That appellants' claim against appellee under the insurance policy on account of the loss is fixed at $11,175.31 (the amount tendered by appellee and deposited in the registry of the federal court), and that said sum constitutes 100% of the subrogation claim of appellee and is subject to disbursement in accordance with the provisions of the stipulation or other order of the trial court.
(2) That appellants and appellee desire to accept $14,567.00 from Blue Flame Gas Company in release and discharge of all claims against that concern, and that upon payment of said sum into the registry of the court it should stand fully released and discharged of all claims and demands on account of all the matters and things alleged in the complaint.
(3) That out of the $14,567.00 so paid there be paid forthwith to appellants and their attorney the sum of $3,391.69.
(4) That the remaining $11,175.31 be disbursed in accordance with a further order of the court in which the following questions should be determined: (a) whether appellee's subrogation claim is subject to reduction on account of appellants' claim that their entire cause of action against Blue Flame Gas Company had been compromised by them for a sum less than the full value thereof; (b) whether the amount to which appellee is entitled is subject to a claim for attorney's fees on account of the services of appellants' attorney in this cause and to payment of a proportionate part of the court costs.
(5) That the court make all appropriate orders based on said stipulation.
(6) That a copy of the stipulation be filed in the litigation pending in the federal court. It was provided, however, that by virtue of the recovery in this action against Blue Flame Gas Company, the issue of appellants' claim against appellee in the federal court of an amount in excess of $11,175.31 is moot except in respect to determining, in the state court, whether or not appellants are entitled to interest and attorney's fees and costs as a charge against appellee's subrogation claim as to the action in the federal court, and that nothing in the stipulation should preclude the assertion of those claims by appellants. It was also declared to be the intent of the stipulating parties "to fix the liability under the policy and the amount of the subrogation claim at the same figure."
Upon payment by Blue Flame of the settlement money into the registry of the state court, appellants filed their "Petition for an Order of Disbursement and Other *177 Relief," praying, inter alia, (a) that they be fully compensated for their entire loss, including expenses, before appellee be entitled to any subrogation against the excess proceeds of settlement, and (b) that appellee be required to pay appellants their proportionate share of expenses, including costs, and attorney's fees incurred in the recovery to the extent of appellee's subrogation claim, or in general for the recovery of the $11,175.31 common fund. In support thereof appellants submitted proofs to the effect that their claim against Blue Flame Gas Company substantially exceeded the amount of the compromise settlement made herein with that concern, that the appellee had contributed little to the prosecution of this suit, that the negotiations for settlement had been substantially concluded prior to appellee's becoming a party, that Blue Flame Gas Company had refused to settle without appellee joining therein, and that appellants had a contingent contract with their attorney to pay a one-third part  the recovery for legal services in the premises.
On February 1, 1965, the trial court entered an order providing for disbursement of the subject funds in accordance with its previously filed memorandum opinion. However, on February 11, 1965, it entered the order appealed by which it held that the relief sought by plaintiffs (appellants) is equitable in nature, and thereupon vacated the prior order, transferred the cause to the equity side, made findings of law and fact, and decreed distribution of the $11,175.31 remaining in the registry of the court as follows: to the clerk for registry fees, $75.34; to attorneys for appellants for appellee's proportionate part of the court costs, fees and service charges in this cause, $91.58; and the balance to the attorneys for appellee for its account. In making said distribution the court observed:
"The first question agreed to be determined by this Court is whether the amount to which the insurance company plaintiff is entitled by subrogation to-wit:  $11,175.31, is subject to reduction because the plaintiffs Morgan claim that the entire cause of action has been compromised by them for less that the full value of their claim against the defendant.
"This question must be answered in the negative for the reason that the plaintiff insurance company sought leave to intervene in the action against the defendant tort-feasor and was granted such leave and made common cause with plaintiffs Morgan in the prosecution of the suit. Under the principle laid down in Forsyth v. Southern Bell Telephone & Telegraph Co., 162 So.2d 916, where no subrogation agreement and assignment has been made by the insured to the insurer upon the payment by the latter of its obligation under its policy of insurance issued to the insured, as is the case here, it is only where the insurer fails or refuses to make common cause with the insured, and the latter compromises his claim for less than his full loss, that the insurer is obligated to deduct from its subrogated claim the excess loss of the insured. In Forsyth the insurer refused to participate in the prosecution of the total claim against the tort-feasor and the Court there, by inference, held that the insured was entitled to satisfy his excess loss from the subrogation claim of the insured. Such is not the case at bar, for the record indicates that the insurer not only participated as a plaintiff, but also it and the Morgans joined in a stipulation to accept the sum of $14,567.00 from the defendant tort-feasor in full release and discharge of both claims  that of the Morgans and that of the insurer plaintiff  against such tort-feasor.
"The second question to be determined by the Court, by stipulation of the parties, is whether the amount of which General Insurance Company of America is entitled is subject to a claim for attorney's fees to the Morgans' attorney, and also whether it is subject *178 to the payment of proportionate court costs. For the same reason which caused the Court to answer Question 1 in the negative, the Court must answer the first part of this question also in the negative. This holding does not mean, of course, that the insured Morgans could not recover an attorney's fee against this insurer in their suit upon the insurance policy which is still pending in the Federal District Court; assuming, of course, they are otherwise entitled to a fee in said pending suit.
"The second part of the second question is answered in the affirmative. Having requested permission to intervene and participate in the prosecution of the claim against the defendant tort-feasor, though admittedly such intervention was for the sole purpose of protecting its subrogation claim, it would be unjust for this Court to require the Morgans to bear all the costs of preparation for suit and trial and filing fees and service charges. Where parties make common cause, even though through their separate counsel as was done here, each should bear a proportionate share of the burden of prosecution, which share should be apportioned between them in accordance with their respective interests in the litigation. The only figures which are before the Court which reflect such respective interests are those which reflect the total amount realized by both plaintiffs, distributed $11,175.31 to the insurer and $3,391.69 to the Morgans. Therefore, it will be the order of the Court that of the total costs incurred, including filing fee, service of process charges, pretrial depositions, court reporter fees, and registry fees, the Morgans will bear 23.3 per cent and the insurance carrier 76.7 per cent. If there have been other expenses incurred in the prosecution of the common cause against the tort-feasor, the same will likewise be so apportioned."
We agree with the stated conclusions of the chancellor. Under the rule in Rosenthal v. Scott, 150 So.2d 433 (Fla. 1963), and Forsyth v. Southern Bell Telephone & Telegraph Co., 162 So.2d 916 (Fla. App. 1964), there is no doubt that appellee could have proceeded independently against the defendant tort-feasors by taking from appellants an assignment and subrogation agreement. The controlling question developed by this appeal is whether intervention by the insurance carrier in a suit by the insured against the tort-feasor, as permitted in this case, is effective to protect its right of subrogation to the same extent as if it had thus independently proceeded. That question is answered in the affirmative.
If the insurer pays a claim for a loss caused by the negligence of a third person and requests the insured to prosecute his claim against the tort-feasor, assists in the prosecution of the claim, and bears its share of the burden of preparing the case for trial, it is entitled, out of the judgment recovered, to the amount which it has paid on account of the loss, notwithstanding the judgment recovered is not, according to the insured's claim, the full value of the property destroyed. Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley, 279 Ill. 118, 116 N.E. 644 (1917).
Where the insurer has intervened in an action by the insured against the wrongdoer, and has shown a monetary interest in the result thereof, the court will not permit a settlement between the insured and the wrongdoer to the detriment of the insurer, but will protect the rights of all parties. The mutual stipulation for settlement with the tort-feasor and for disposition of the proceeds by order of the court was regular in all respects. The conclusion of the insured to settle for less than the full amount of the claim against the tort-feasor will not operate, in the absence of a clear *179 agreement with the insurer, to reduce its subrogation rights in the settlement proceeds.
The decree appealed is
Affirmed.
WIGGINTON, Acting C.J., and JOHNSON, J., concur.