377 So.2d 827 (1979)
FLORIDA FARM BUREAU INSURANCE COMPANY, Appellant,
v.
Frank W. MARTIN and Melba Martin, Husband and Wife, Appellees.
No. KK-352.
District Court of Appeal of Florida, First District.
December 14, 1979.
*828 Allen W. Lindsay of Beall, Lindsay & Lindsay, P.A., Milton, for appellant.
William K. Jennings, Fort Walton Beach, for appellees.
PER CURIAM.
Florida Farm Bureau Insurance Company (Farm Bureau) appeals a final judgment denying it reimbursement under a subrogation claim from funds recovered by its insureds, the Martins, in a suit against the tortfeasor and its insurer. The trial court denied distribution of the proceeds to Farm Bureau because the loss sustained exceeded the total recovery from all parties. We affirm.
Farm Bureau paid the appellees approximately $42,535 for fire losses to their property. In July 1976, the appellees filed a complaint against the tortfeasor and its insurer alleging negligence. An answer was filed in August 1976 and a motion to intervene was filed by Farm Bureau in October 1976. Farm Bureau's complaint alleged a right of subrogation regarding the amounts paid by it to the appellees. Neither a loan receipt nor assignment of subrogation rights was executed in this case. Rather, the contract read:
This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.
Pursuant to a hearing regarding stipulations, all parties stipulated that the appellees' property damage totalled $110,000; that recovery from the tortfeasor's insurer would be the maximum policy limit of $50,000; and that recovery from the tortfeasor would be the maximum collectable amount of $2,500. The trial court entered a partial final judgment denying Farm Bureau subrogation because the appellees' damages of $110,000 exceeded the total recovery of $95,035.00. This appeal followed.
Farm Bureau primarily contends that this case is controlled by Morgan v. General Insurance Company, 181 So.2d 175 (Fla. 1st *829 DCA 1965). In Morgan, the court held that intervention by the insurance carrier in a suit by the insured against the tortfeasor was effective to protect its right of subrogation to the same extent as if it had independently proceeded. The court approved the following principle:
If the insurer pays a claim for a loss caused by the negligence of a third person and requests the insured to prosecute his claim against the tort-feasor, assists in the prosecution of the claim, and bears its share of the burden of preparing the case for trial, it is entitled, out of the judgment recovered, to the amount which it has paid on account of the loss, notwithstanding the judgment recovered is not, according to the insured's claim, the full value of the property destroyed. Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley, 279 Ill. 118, 116 N.E. 644 (1917).
The court concluded its reasoning by stating the following:
Where the insurer has intervened in an action by the insured against the wrongdoer, and has shown a monetary interest in the result thereof, the court will not permit a settlement between the insured and the wrongdoer to the detriment of the insurer, but will protect the rights of all parties. The mutual stipulation for settlement with the tort-feasor and for disposition of the proceeds by order of the court was regular in all respects. The conclusion of the insured to settle for less than the full amount of the claim against the tort-feasor will not operate, in the absence of a clear agreement with the insurer, to reduce its subrogation rights in the settlement proceeds.
181 So.2d at 178-179.
Appellees contend that this case is distinguishable from Morgan and that the appropriate principle to be applied is the one stated in Central National Insurance Group v. Hotte, 312 So.2d 235 (Fla. 1st DCA 1975). There, this court cited with approval the general principles of subrogation as quoted from 46 C.J.S. Insurance § 1209(b):
`If insured obtains satisfaction from the wrongdoer and has previously received payment of the loss from the company, he must account therefor to the company, the general rule being that the company may recover from insured only the excess, which insured has received from the wrongdoer causing the loss, remaining after insured is fully compensated for his loss and the cost and expenses of the recovery thereof.'
312 So.2d at 237.
Under the facts of this case, we think the latter principle is the one which should be applied here. Subrogation is a normal incident of indemnity insurance where the primary purpose of the insurance is to allow true restitution for the loss suffered, here, the loss being property destroyed by fire. Since the loss can be objectively valued, the possibility of double recovery occurs if the insured is permitted to keep all proceeds collected from the insurer and the tortfeasor. To minimize this possibility, the doctrine of subrogation is employed.
Subrogation is a `creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it * * * a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer.' 16 Couch, Cyclopedia of Insurance Law, § 61:18 (2d Ed. 1964).
... Furthermore, it is not available to an extent greater than the amount paid by the insurer, and then only after the insured has been fully indemnified.
DeCespedes v. Prudence Mutual Casualty Company of Chicago, Ill., 193 So.2d 224, 227 (Fla. 3d DCA 1966), cert. denied 202 So.2d 561 (Fla. 1967) (footnotes omitted).
*830 In Garrity v. Rural Mutual Insurance Company, 77 Wis.2d 537, 253 N.W.2d 512 (1977), the Garritys had a fire insurance policy with Rural Mutual Insurance Company. The Garritys suffered a fire loss to their dairy barn and they were paid $67,227.12 by Rural Mutual, the limits payable under the policy. The total amount of their loss was in excess of that amount although the amount of such loss was not stipulated to. Rural Mutual also insured the alleged tortfeasor. The complaint alleged damages in the amount of $110,000, and also named Rural Mutual as a defendant. Rural Mutual filed a third-party complaint against themselves as insurance carrier of the Garritys and asked for a determination of its right as a third-party defendant to any sums that it might become liable to pay. The subrogation clause in the contract was identical to the provision in this case. Also, the Garritys executed a subrogation receipt. The court held that the Garritys must first be "made whole" before the insurer is entitled to share in the amount recoverable from the tortfeasor and that the damages found in a subsequent trial, in addition to those already paid by Rural Mutual, would inure to the benefit of the Garritys to the extent necessary to make them whole. The court reasoned:
Under common law subrogation, the subrogor (here the insured) must be mad [sic] whole before the subrogee (insurance company) may recover anything from the tort-feasor. We conclude that the subrogation clause contained in the standard fire insurance policy and set forth above did not change the substantive common law rights of the insured.
.....
... It has been held that the cause of action (against the tort-feasor) is indivisible and the owner of the policy should be first to make good his own loss; where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.
.....
Since the parties have stipulated that the Garritys have not been made whole for the loss they have suffered, under common law principles of subrogation, Rural Mutual's right to share in the $25,000 recoverable from themselves as the insurer of the tort-feasor is secondary to the insured's right to recovery.
253 N.W.2d at 514-515.
Although we express no opinion as to whether the execution of the subrogation receipt modified the common law doctrine of subrogation, we note that the court further held that the execution of the receipt pursuant to the subrogation clause did not affect the applicability of the normal rule of subrogation.[1] See also Skauge v. Mountain States Telephone and Telegraph Company, 565 P.2d 628 (Mont. 1977); 16 Couch on Insurance 2d § 61:61 (2d Ed. 1966).
It has also been stated:
Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasor.
Lyon v. Hartford Accident and Indemnity Company, 25 Utah 2d 310, 480 P.2d 739, 744 (Utah 1971) (footnotes omitted). Here, Farm Bureau could have proceeded independently against the tortfeasor by taking an assignment and subrogation agreement. State Farm Mutual Automobile Insurance Company v. Robbins, 237 So.2d 208 (Fla. 4th DCA 1970). Otherwise, the subrogation clause does not appear to grant Farm Bureau any additional rights to those already existing under the common law rule of subrogation.
Morgan is distinguishable because there we held that intervening insurer will have its subrogation rights protected to the same extent as if it had proceeded independently in a case where the insured decides to settle, *831 releasing the tortfeasor from all claims, for less than the full amount of the claim. In such a case the settlement, made without regard to the tortfeasor's resources, including insurance, prevents the insured from claiming that since his claim exceeds the settlement, the insurer is not entitled to reimbursement. In Government Employees Insurance Company v. Graff, 327 So.2d 88 (Fla. 1st DCA 1976), we further explained the "general principles of subrogation" as referred to in Hotte as follows:
We consider that a party injured by an uninsured vehicle has received full compensation for his loss, within the meaning and application of the general principles referred to in Hotte, when he has received full payment of a judgment or of an agreed settlement which was unaffected by concern for the defendant's lack of insurance. The `general principles of subrogation' referred to in Hotte do not permit an injured party to collect uninsured vehicle benefits from his own insurer, negotiate an acceptable settlement with a tortfeasor whose noninsurance resources are equivalent to full liability protection, and then tender only partial reimbursement on the ground that, considering the severity of the injuries but not other factors which typically weigh in the evaluation of claims, the claim against the tortfeasor was more valuable than all sums received.
We think the foregoing principles of subrogation require affirmance here. In Morgan, we note that the settlement amount exactly equalled the amounts paid by the insurer to its insured, with an additional stipulated amount constituting attorney's fees. In Morgan, we repeatedly stated the fact that the insurer and insured stipulated to accept a sum from the tortfeasor in release and discharge of all claims against it equal to the amount paid by the insurer to the insured. 181 So.2d at 176, 177, 178. There is no indication in that case that the settlement was compromised for the maximum amount recoverable from the tortfeasor. Here, the settlement is not to the detriment of the insurer because it is clear that the amount recovered was agreed by all parties to be the maximum amount which could be recovered in all events, whether the insurer had intervened or not, and whether or not the case had been concluded by a judgment after trial. Finally, we find the record insufficient to show that Farm Bureau significantly assisted the prosecution as is required by the rule stated in Pontiac Mutual County Fire and Lightning Insurance Company v. Sheibley, supra. This result is consistent with the doctrine of subrogation; there is no double recovery and the tortfeasor has been called upon to pay all that it possibly can. See DeCespedes v. Rural Mutual Insurance Company, supra. The risk of recovery was one which the insurer was paid to assume.
AFFIRMED.
MILLS, C.J., and ERVIN and LARRY G. SMITH, JJ., concur.
NOTES
[1] Compare Peterson v. Ohio Farmers Ins. Co., 175 Ohio St. 34, 191 N.E.2d 157 (1963).