NESBITT, Judge.
Maglio appeals from the trial court’s order holding that NECA-IBEW Welfare Trust Fund (NECA-IBEW) is entitled to a subrogation interest for the amounts paid to Maglio in compensation for his injuries. We affirm.
Maglio, who was riding a motorcycle, was injured in a near-collision with a negligently operated school bus owned and operated by the Dade County School Board (School Board). Maglio instituted an action for damages against the School Board. During the pendency of this action, NECA-IBEW compensated Maglio for some of his medical expenses and lost wages. Maglio eventually entered into a settlement agreement with the School Board and dismissed his action against it. When NECA-IBEW requested that it be reimbursed from the settlement fund for the compensation it had paid to Maglio, Maglio motioned the court for the equitable distribution of the fund and for a determination of NECA-IBEW’s subrogation interest in the settlement fund. The trial court held that NECA-IBEW was entitled to a subrogation interest in the settlement fund for the amount it had paid to Maglio in compensation of his injuries. Maglio appeals from this order.
Maglio contends that NECA-IBEW would not be entitled to collect for the compensation paid to Maglio for his injuries since the collateral source rule would require that a verdict be reduced by that amount, see § 627.7372, Fla.Stat. (1983), and, therefore, NECA-IBEW is barred from asserting its subrogation interest against the settlement fund for reimbursement of this amount. See Prince v. American Indem. Co., 431 So.2d 270 (Fla. 5th DCA 1983). We disagree.
The reason an insurer’s right to reimbursement from a settlement fund is destroyed, to any extent, by the collateral source rule is because it is assumed that the tortfeasor would not have included in the settlement that amount which the injured would have been unable to collect as a result of the rule, and therefore, the settlement “must represent something other than recovery for the medical benefits already paid for by” the tortfeasor. Prince, 431 So.2d at 271; see also Molyett v. Society Nat’l Life Ins. Co., 452 So.2d 1114 (Fla. 2d DCA 1984). Even if we were to accept that Maglio’s argument continues to have some validity, in light of the recent Florida supreme court decisions in Blue Cross & Blue Shield, Inc. v. Matthews, 498 So.2d 421 (Fla.1986) and Blue Cross & Blue Shield, Inc. v. Ryder Truck Rental, Inc., 498 So.2d 423 (Fla.1986),[1] we must reject its applicability here.
*449 It is clear that section 627.732(1) specifically excludes:
any motor vehicle which is used in mass transit or public school transportation and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit or public school transportation authority, or a political subdivision of the state
from the definition of a “motor vehicle" as that term is “used in §§ 627.730-627.7405.” § 627.732. There is no dispute that the bus involved in this accident would be excluded from the definition of a motor vehicle under this statute. Furthermore, there can be no question but that the definitions of section 627.732 apply to section 627.7372. Cf Ward v. Hillsborough County School Bd., 447 So.2d 397 (Fla. 2d DCA 1984) (section 627.734, excluding government owned vehicles from sections 627.730-627.-741, was applicable to 627.7372). Thus, the bus in this case is not a “motor vehicle” for purposes of section 627.7372. Since a motorcycle is not a “motor vehicle” for purposes of the no fault law either, Scherzer v. Beron, 455 So.2d 441, 442 (Fla. 5th DCA), cause dismissed, 459 So.2d 1039 (Fla.1984) the collateral source rule is not applicable. Consequently, it would not have prevented Maglio from recovering any compensation he received from collateral sources.
Since the collateral source rule would not have been an impediment to Maglio’s claim in this case, the trial court was free to find that the settlement reached with the tort-feasor included those payments for medical benefits made by NECA-IBEW. Since NECA-IBEW is entitled to be reimbursed for those payments, see Florida Farm Bureau Ins. Co. v. Martin, 377 So.2d 827 (Fla. 1st DCA 1979), we find that the trial court correctly held that NECA-IBEW could recover those funds from Maglio.
Accordingly, the order is affirmed.

. The Florida supreme court has held that a health insurer does not lose the right to seek indemnification from the tortfeasor, for the amounts paid to compensate the insured, simply because the insured's claim against the tort-feasor for this amount would be impeded by the collateral source rule. Matthews, 498 So.2d at 421; § 627.7372. Thus, Maglio’s contention that NECA-IBEW is barred from asserting its right to reimbursement only because Maglio’s claim for collateral source payments is impeded is without merit. However, the holding in Mat *449 thews does not affect the reasoning relied upon in Prince, 431 So.2d at 270, for denying an insurer the right to be reimbursed out of the settlement received by the insured. It still stands to reason that the tortfeasor would not include in a settlement that amount which the injured would have been unable to collect had there been a trial. Since the settlement must represent compensation other than the collateral payments made by the insurer, the insurer should not be able to seek reimbursement out of that fund, but the insurer would be free to seek that amount from the tortfeasor. See Mathews, 498 So.2d at 421.