897 So.2d 471 (2004)
Ifrain MONTE DE OCA, Appellant,
v.
STATE FARM FIRE & CASUALTY COMPANY, Appellee.
Richard Snell, Appellant,
v.
Allstate Indemnity Company and Allstate Insurance Company, Appellees.
Nos. 3D03-661, 3D03-1468.
District Court of Appeal of Florida, Third District.
December 22, 2004.
# 3D03-661: Diane H. Tutt (Davie) and Sharon C. Degan, for appellant Monte de Oca.
# 3D03-661: Akerman Senterfitt and Marcy Levine Aldrich and Nancy A. Cooperthwaite *472 and Jason Kellogg, for appellee State Farm.
# 3D03-1468: Boies, Schiller & Flexner and H. Stephen Rash and Steven W. Davis and Orion G. Callison, III, for appellant Snell.
# 3D03-1468: Akerman Senterfitt and Marcy Levine Aldrich and Jason Kellogg and Nancy A. Copperthwaite, for appellees Allstate.
Before SCHWARTZ, C.J. and COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, RAMIREZ, WELLS, and SHEPHERD, JJ.
FLETCHER, Judge.
In these cases, consolidated for rehearing en banc, Ifrain Monte de Oca and Richard Snell appeal from trial court orders dismissing with prejudice their class action complaints against, respectively, State Farm Fire and Casualty Company, and Allstate Indemnity Company and Allstate Insurance Company.
Monte de Oca[1] [the Insured] had an automobile insurance policy with State Farm. In February, 2001 the Insured's auto was involved in an accident with another vehicle. In accordance with the insurance policy's collision coverage provisions State Farm paid the Insured the full amount of his property damage, minus the $500 deductible set out in the policy.
State Farm pursued a subrogation[2] claim on Monte de Oca's behalf. The subrogation claim was resolved on the basis that both drivers were 50% negligent, consequently each insurer recovered only half of its subrogation demand. State Farm reimbursed the Insured half ($250) of his $500 deductible.[3]
The Insured filed this action against State Farm, seeking the balance ($250) of his deductible. The Insured sought to bring this suit on behalf of himself and all other State Farm insureds, nationwide, for whom State Farm had provided collision coverage, who were paid by State Farm after their vehicle was damaged in an accident with another automobile, and who did not receive back 100% of their deductible from the subrogation claim money that State Farm received from either the other driver or that driver's insurance carrier.
On State Farm's motion the trial court entered final judgment dismissing the complaint with prejudice on the bases that the Insured's complaint failed to state a cause of action and that the case could not be maintained as a class action. The Insured argues here that his complaint does state a cause of action under the common law "made whole"[4] doctrine and *473 is appropriate for a class action. We conclude that the complaint does not state a cause of action,[5] thus it is not necessary to deal with the class action issue.
The purposes of subrogation are (1) to prevent over compensation to an insured, and (2) to assure that a wrongdoer who is legally responsible for the harm will not receive the windfall of being absolved from liability merely because the insured has obtained and paid for insurance for his or her own benefit. 3 Conn. Ins. L.J. 105, 107-08. The Wisconsin Supreme Court, in Sorge v. National Car Rental Sys., 182 Wis.2d 52, 512 N.W.2d 505 (1994), made it quite clear: The purpose of subrogation is to prevent a double recovery by the insured, who is to be made whole, but not more than whole.
In Insurance Co. of North America v. Lexow, 602 So.2d 528, 529-30 (Fla.1992), the Florida Supreme Court acknowledged the application of the made whole rule in Florida:
"Using the common law subrogation principle, endorsed by Florida courts, the district court reasoned that the insured was entitled to be made whole before the subrogated insurer could participate in the recovery from a tortfeasor."
The rule was discussed by the First District Court of Appeal in Florida Farm Bureau Ins. Co. v. Martin, 377 So.2d 827 (Fla. 1st DCA 1979). The court quoted 16 Couch, Cyclopedia of Insurance Law, § 61:18 (2nd ed.1964):
"[A] wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer." [e.s.]
The Insured is demanding the second $250 of the deductible based on his contention that without his receiving it he has not been made whole. However, it is to be recalled that the Insured is a "wrongdoer"  actually one of the two wrongdoers  as the Insured and the other driver were both 50% comparatively negligent. As we previously observed, Florida Farm Bureau v. Martin, supra, a wrongdoer legally responsible for harm should not receive a windfall of being absolved from liability.
The Insured, as a wrongdoer legally responsible for 50% of the harm, is not entitled to be totally absolved from liability and must not receive a windfall. His liability as a 50% comparative wrongdoer is for half of the deductible. Under this formula Monte de Oca, and Snell under his facts, have been made whole and thus have no cause of action. We affirm the orders in both cases.
Affirmed.
SCHWARTZ, C.J., and LEVY, GERSTEN, and GREEN, JJ., concur.
SHEPHERD, J. (specially concurring).
I concur with the majority opinion, and add only the following caution. We must remain mindful that the good people of Florida  the one unrepresented group here already overburdened with unconscionable *474 insurance premiums  will be the real losers if courts advance rules that make it more difficult or diminish the market incentive for an insurance company to recover from a wrongdoer by slavishly requiring them to apply the "insured-first" version of the "made-whole" rule. See dissent at 474.[6] A blanket application of the dissent's proposed "insured-first" regime will guarantee that insurance companies will simply re-adjust their premiums to pass on the added cost to consumers. Because of the widespread confusion regarding the doctrine of subrogation and the propriety of when to apply the "made-whole" rule, courts should take great care to not further complicate an already overregulated segment of our private economic lives. See generally Jeffrey A. Greenblatt, Insurance and Subrogation: When the Pie Isn't Big Enough, Who Eats Last?, 64 U. Chi. L.Rev. 1337, 1355 (1997)("[d]eciding what law should apply without understanding the economics of insurance is the equivalent of determining chess moves by rolling dice"). The free market serves consumers best when laws are clear, concise, and stable. Likewise, consumers pay when the law remains murky. For that reason, the majority's pro rata, fault-based reimbursement engine works best, unless the parties have contracted to do otherwise.
WELLS, Judge. (dissenting).
I respectfully dissent. I agree with the majority's observation that the "made-whole" rule applies in Florida. I do not, however, agree with the majority's conclusion that an insured's comparative negligence should be considered in determining when an insured has been "made whole." I would, therefore, reverse for class certification against State Farm and Allstate for return of 100% of their insureds' deductibles based on the insurers' violation of the "made-whole" rule.
Generally, a subrogation claim does not exist until the subrogor's entire demand has been satisfied:
No claim by subrogation ... to ... the remedies enjoyed by a creditor for the collection of his demand, can be enforced, until the whole demand of the creditor has been satisfied....
Whyel v. Smith, 101 Fla. 971, 134 So. 552, 554 (1931)(quoting Sheldon on Subrogation (2d Ed.) at 373). Thus, "where the insurer has paid the full amount required by the insurance contract, but the insured's actual loss exceeds the total amount recovered from the insurer and the tort-feasor, the insurer's subrogation rights cannot be enforced because the insured has not been made whole." Collins v. Wilcott, 578 So.2d 742, 744 (Fla. 5th DCA 1991); Rubio v. Rubio, 452 So.2d 130, 132 (Fla. 2d DCA 1984)(finding that "the insurer has no right as against the insured where the compensation received by the insured [from both the insurer and the wrongdoer] is less than his loss")(quoting 16 G. Couch, Cyclopedia of Insurance Law 2d § 61:64 (rev. ed.1983)).
As these authorities confirm, the focus of the "made whole" rule is not on what an insured may legally recover from the tortfeasor and the tortfeasor's insurer, but on the total damages or loss sustained by the insured. See also Magsipoc v. Larsen, 639 So.2d 1038, 1042 (Fla. 5th DCA 1994)(stating that "no common law right of subrogation exists for an indemnitor who has fully paid its required sums under an insurance contract to its insured, where the insured has not recovered the total amount of damages, *475 and cannot be said to have been `made whole'"). Thus, in Florida Farm Bureau Ins. Co. v. Martin, 377 So.2d 827, 828 (Fla. 1st DCA 1979), one of the cases on which the majority chiefly relies, subrogation was denied because "the loss sustained exceeded the total recovery from all parties."[7]
The majority disregards this long-standing precedent to focus on what the insured may legally recover after considering the insured's fault (comparative negligence), rather than on the insured's loss. I cannot agree with this new formulation of the law.
First, it ignores the undisputed fact that an insurer's obligation to pay under the terms of an insurance policy does not hinge on an insured's "wrongdoing," or the lack thereof, but on the insurer's contractual obligation to pay covered losses irrespective of fault. That is precisely what the insured contracts and pays premiums for. Thus, it makes no sense to say that when an insured party is comparatively negligent, the party's insurer will reap the benefit of that fault to receive reimbursement from the tortfeasor (or the tortfeasor's insurer) ahead of the insured, so that the insured receives less than full payment of his or her losses while the insurer (which has contractually agreed to bear the loss) is reimbursed. See Florida Farm Bureau, 377 So.2d at 830 (noting "[i]t has been held that the cause of action (against the tort-feasor) is indivisible and the owner of the policy should be first to make good his own loss; [because] where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume")(quoting Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 253 N.W.2d 512 (1977)).
Second, neither Monte de Oca nor Snell gave their insurers authority to determine the existence or extent of their comparative fault. The insurers simply took it upon themselves to do so and then proceeded to adjust the amount of settlement proceeds their insureds were to receive for uninsured losses based on their self-determined percentages of fault, pocketing the balance to offset payments they were contractually obligated to make without consideration of fault. This is contrary to general subrogation principles and the case law applying them:
[T]he general rule under the doctrine of equitable subrogation is that where an insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights.
16 Couch on Insurance 3d § 223:134 (2000)(footnotes omitted).
Third, the authorities on which the majority rely to support its conclusion that wrongdoing or fault (that is, comparative negligence) must be considered in determining whether an insured has been made whole, do not remotely support that result. To the contrary, the decision in Florida *476 Farm Bureau holds that an insured's decision to settle for less than the full measure of his or her damage does not entitle the insurer to share in the settlement proceeds because the insured had not been made whole. Florida Farm Bureau Ins. Co., 377 So.2d at 829-30. Although Florida Farm Bureau does, as the majority notes, mention wrongdoing, it does so in the context of restating the general principles governing subrogation; it has nothing to do with fault on the part of an insured:
Under the facts of this case, we think the latter principle [that the insured gets paid first, then the insurer gets the excess paid by the wrongdoer/tortfeasor] is the one which should be applied here. Subrogation is a normal incident of indemnity insurance where the primary purpose of the insurance is to allow true restitution for the loss suffered, here, the loss being property destroyed by fire. Since the loss can be objectively valued, the possibility of double recovery occurs if the insured is permitted to keep all proceeds collected from the insurer and the tortfeasor. To minimize this possibility, the doctrine of subrogation is employed.
Subrogation is a `creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it * * * a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his harm, the liability of the third person should now inure for the benefit of the insurer.' 16 Couch, Cyclopedia of Insurance Law, s 61:18 (2d Ed.1964)
... Furthermore it is not available to an extent greater than the amount paid by the insurer, and then only after the insured has been fully indemnified.
Id. at 829 (citation omitted).
The quoted portion of Couch's Cyclopedia of Insurance Law certainly does not support the majority's conclusion that an insured may be viewed as a "wrongdoer" in a subrogation context. As the most recent version of Couch confirms, that portion of Couch quoted by the majority deals solely with the relationship between a tortfeasor and an injured party's insurer, and makes clear that a tortfeasor will not be relieved of its obligation to pay damages sustained by an injured party simply because that party has insurance:

From the perspective of the tortfeasor, it has been stated that a wrongdoer who is legally responsible for the harm should not receive the windfall of being absolved from liability because the insured had the foresight to obtain, and had paid the expense of procuring, insurance for his protection; since the insured has already been paid for his or her harm, the liability of the third person should now inure for the benefit of the insurer.
16 Couch on Insurance 3d § 222:8 (2000)(emphasis added).
Simply put, there is no support in either Florida Farm Bureau or in that portion of Couch quoted by the majority for the proposition that an insured's "wrongdoing" should be considered in determining what amounts should be recovered by a subrogated insurer.
Fourth, although the majority is correct when it states that the purpose of subrogation is to prevent a double recovery by the insured, Monte de Oca and Snell will receive no double recovery if the entire *477 amount of their deductibles is paid to them from the settlement funds obtained by their insurers.[8] Assuming, for example, that each incurred $10,000 in damages; that the insurer for each paid them the full amount of their damages less a $1000 deductible ($9,000); and, that the insurer for each recovered 50% of the total loss from each tortfeasor's insurer ($5,000), Monte de Oca and Snell would only obtain a single recovery of $10,000 if "made whole" by receipt of $1000 from the settlement proceeds for their deductibles with the $4,000 remainder to be paid to their insurers. The fact that the tortfeasors and the tortfeasors' insurers satisfied their obligation to Monte de Oca and Snell in this case by reimbursing them less than the full measure of their loss  by virtue of State Farm's and Allstate's agreements regarding Monte de Oca and Snell's comparative negligence  does not absolve State Farm and Allstate, who contracted to pay irrespective of fault, from bearing the loss. See 16 Couch on Insurance 3d § 223:136 (2000)(stating that "[t]he equitable principle underlying the made whole rule is that the burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured, who is the least able to shoulder the loss"); see also Fair Grounds Corp. v. ADT Sec. Sys., 719 So.2d 1110, 1120 (La.Ct.App.1998)(holding that "[a]lthough the difference between the amount of the loss and the judgment against the tortfeasor was based on an assessment of comparative fault on the part of the [insured], ... as the primary property insurer of the [insured], [the insurer] contracted to bear this loss"); but see Sorge v. Nat'l Car Rental Sys., Inc., 182 Wis.2d 52, 512 N.W.2d 505 (1994)(where the insured entered into a settlement agreement taking into account a deduction based upon the insured's own contributory negligence, and where the insured nevertheless stipulated that the settlement amount was all that she was entitled to recover from the tortfeasor, holding that insured had been made whole and permitting pro-rata reimbursement to her insurers), called into doubt by Ives v. Coopertools, A Div. of Cooper Indus., Inc., 208 Wis.2d 55, 559 N.W.2d 571, 579-83 (1997)(Geske, J., concurring)(stating that Sorge was "erroneous," and that Sorge should be overruled "to preserve the requirement for a made whole determination before a subrogated insurer may be reimbursed").
Lastly, the "made whole" rule as applied prior to the majority decision had the advantage of simplicity of application. The majority's new formulation opens Pandora's *478 Box, as at least one other jurisdiction has learned. See e.g. Ives, 559 N.W.2d at 573-83 (discussing the "uncertain and unworkable status of the ... law on subrogation reimbursement" when the insured's fault is taken into account).
I also cannot agree with the underlying premise of the concurring opinion that we are free to approve the unilateral decisions of these insurers to reimburse their insureds on a pro-rata basis because these policies do not provide otherwise. Allstate's subrogation clause provides: "When we pay, your rights of recovery from anyone else become ours up to the amount we have paid. You must protect these rights and help us enforce them." State Farm's clause provides: "Under the liability and physical damage coverages the right of recovery of any party we pay passes to us. Such party shall: (1) not hurt our rights to recover; and (2) help us get our money back." These provisions neither waive the made whole rule nor alter its application to permit pro rata reimbursement. See Florida Farm Bureau Ins. Co., 377 So.2d at 828, 830 (finding that the made whole rule applied to a subrogation clause providing: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company" because this "subrogation clause does not appear to grant Farm Bureau any additional rights to those already existing under the common law rule of subrogation"); see also Wolfe v. Alfa Mut. Ins. Co., 880 So.2d 1163, 1167 (Ala.Civ.App.2003)(finding that the made whole rule applies when a subrogation clause "simply states the fact that [the insurer] holds a general right of subrogation when the insured has a right to recover damages from a third party"); Sapiano v. Williamsburg Nat'l Ins. Co., 28 Cal.App.4th 533, 33 Cal.Rptr.2d 659, 661 (1994)("[a]lthough insurers may place subrogation clauses in their policies, those provisions typically are general and add nothing to the rights of subrogation arising by law") (citations omitted); Duncan v. Integon Gen. Ins. Corp., 267 Ga. 646, 482 S.E.2d 325, 326-27 (1997)(finding that the made whole rule applied to policy language stating "If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall: 1. Hold in trust for us the proceeds of the recovery; and 2. reimburse us to the extent of our payment," because "[t]he policy language at issue does `not express an intent to invest the [insurance] carrier with a priority over its less than fully compensated insured.'")(quoting Wine v. Globe American Cas. Co., 917 S.W.2d 558, 564 (Ky.1996))(emphasis in original); Willard v. Auto. Underwriters, Inc., 407 N.E.2d 1192, 1193 (Ind.Ct.App.1980)(finding that the made whole rule applied to a policy provision stating: "In the event of payment to any person under Coverage C-3 the company shall be entitled, to the extent of such payment, to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness, disease or death because of which such payment is made" because the policy did not clearly and unequivocally provide for pro tanto subrogation).
"Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasor." Florida Farm Bureau *479 Ins. Co., 377 So.2d at 830 (quoting Lyon v. Hartford Accident & Indem. Co., 25 Utah 2d 311, 480 P.2d 739, 744 (1971), overruled on other grounds by Beck v. Farmers Ins. Exch., 701 P.2d 795, 798 n. 1 (Utah 1985)); see also Wolfe, 880 So.2d at 1166 (Ala.Civ.App.2003)(noting that the better reasoned rule followed by a number of jurisdictions is that equitable principles apply to all instances of subrogation except when the insurance contract expressly provides otherwise; thus, "the made-whole doctrine will apply in all subrogation cases unless the contract `expressly provides' that it does not apply"); Sapiano, 33 Cal.Rptr.2d at 661 (stating that the made whole rule applies to conventional (contractual) subrogation "unless the contract by which such right is created provides otherwise") (quoting Chase v. Nat'l Indem. Co., 129 Cal.App.2d 853, 278 P.2d 68, 74 (1954)); Duncan, 482 S.E.2d at 326 (holding that "in the absence of an express provision in the policy specifying that the complete compensation rule does not qualify the insurer's invocation of a reimbursement provision as to medical payments, that rule implicitly applies and mandates the insured's complete compensation")(emphasis in original); Willard, 407 N.E.2d at 1193 (stating that "[t]he general rule applicable to actions based on the ground of subrogation is that the right does not exist unless the whole debt has been paid. Even if a surety is liable for only part of the debt and pays that part for which he is liable, he cannot be subrogated until the whole demand or debt is satisfied. The rule applies to contractual as well as equitable subrogation, unless the contract by which such right is created provides otherwise. Where the claim to pro tanto subrogation (subrogation before the debt is satisfied) is based in contract, the contract must be clear, unequivocal and so certain as to admit no doubt on the question")(quoting Capps v. Klebs, 178 Ind.App. 293, 382 N.E.2d 947, 950 (1978)) (citation omitted); but see Swanson v. Hartford Ins. Co. of Midwest, 309 Mont. 269, 46 P.3d 584, 589 (2002)(holding that "it is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary"); Ruckel v. Gassner, 253 Wis.2d 280, 646 N.W.2d 11, 13 (2002)(finding that "an insured must be made whole before the insurer may exercise subrogation rights against its insured, even when unambiguous language in an insurance contract states otherwise"). Since the made whole rule has not been waived or modified by these policies, Monte de Oca and Snell must be paid first and in full.
Under the circumstances, I would apply the made whole doctrine to the instant matter and find that neither Allstate nor State Farm may receive any portion of the sums paid by the alleged tortfeasors or their insurers until Monte de Oca and Snell have received 100% of their losses (here, 100% of their deductibles). Moreover, I would recede from that portion of State Farm Mut. Auto. Ins. Co. v. Kendrick, 822 So.2d 516, 518 (Fla. 3d DCA 2002), stating that such cases are unsuitable for class action treatment, and for the reasons discussed in Powers v. Govt. Employees Ins. Co., 192 F.R.D. 313, 320 (S.D.Fla.1998), I would find that not only can Monte de Oca and Snell state a cause of action against the insurers for violation of the made whole doctrine, but also that they may maintain this action as a class.
COPE, GODERICH and RAMIREZ, JJ., concur.
NOTES
[1] Our discussion of Monte de Oca's situation applies to Snell except where we otherwise indicate.
[2] Subrogation is generally defined as

"The substitution of one person in the place of another with reference to a lawful claim, demand or right, ... so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities."
Black's Law Dictionary 1595 (4th ed.1968).
In relation to insurance,
"Subrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer."
John Dwight Ingraham, Priority Between Injured and Insured in Subrogation Recoveries, 3 Conn. Ins. L.J. 105, 106-07 (1996-97) quoting 16 George J. Couch, Couch on Insurance § 61.1 (Ronald A. Anderson & Mark S. Rhodes eds., rev. ed. (1983)).
[3] Allstate offered to refund Snell 75% of his deductible based on its recovery of 75% of its subrogation demand.
[4] The made whole doctrine, or rule, simply stated is:

"Under common law subrogation the subrogor (here the insured) must be mad[e] whole before the subrogee (insurance company) may recover anything from the tort-feasor."
Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 253 N.W.2d 512, 514-15 (1977).
[5] See Schonau v. GEICO Gen. Ins. Co., ___ So.2d ___ (Fla. 4th DCA 2004) in which the 4th DCA has recently reached the same conclusion.
[6] Cf. Schonau v. GEICO General Ins. Co., ___ So.2d ___ (Fla. 4th DCA 2004) (restricting application of the "made whole" rule to that limited class of cases where the tortfeasor is unable to fully reimburse plaintiff for her loss).
[7] In that case, the owners of property which sustained damage in a fire were compensated by their insurer (approximately $42,500) and then brought suit against a tortfeasor and its insurer for the remainder of their damages. The action ultimately settled, with the tortfeasor paying $2,500 and the tortfeasor's insurer paying $50,000 (the policy limits). All parties agreed that the property damage totaled $110,000. After the action settled, the owners' insurer sought subrogation of amounts it had paid ($42,500) to the owners under their policy. Because the total amount paid to the owners from all sources ($2,500 from the tortfeasor; $50,000 from the tortfeasor's insurer; and $42,500 from the owners' insurer) did not exceed the total damage to the property ($110,000), subrogation was denied.
[8] When these insurers sought to recover amounts paid under their policies, they also sought to recover the insureds' uncovered losses (the deductibles) as well. They correctly did so because there is but a single property damage claim which cannot be split. See Florida Farm Bureau, 377 So.2d at 830 (noting "[i]t has been held that the cause of action (against the tort-feasor) is indivisible"); McKibben v. Zamora, 358 So.2d 866, 868 (Fla. 3d DCA 1978) (confirming the general rule that all damage arising from a single wrongful act must be recovered in a single lawsuit, the recognized exception being an action for personal injuries and a subrogated insurer's action for property damage arising from the same wrongful act)(citing Rosenthal v. Scott, 150 So.2d 433, 438 & n. 4 (Fla.1963)(on rehearing)(stating the rationale for permitting actions for personal injuries and subrogated property damages to be split)); see also DeCarlo v. Palm Beach Auto Brokers, Inc., 566 So.2d 318, 319 (Fla. 4th DCA 1990) (refusing to permit an action for personal injuries after a subrogated insurer had recovered in a separate action for personal injuries, finding that "[a]n indivisible cause of action may not be split into multiple actions.... There is no authority or justification for our engrafting a further exception onto the rule against splitting causes of action by permitting the splitting of claims for personal injury where some of the personal injury damages may exceed the plaintiff's uninsured motorists coverage").