# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**FIVE SOLAS, LLC** and **WILLIAM W. PRICE, P.A.**,
Appellants/Cross-Appellees,

v.

**RAM REALTY SERVICES, LLC** and **SODIX FERN, LLC**
d/b/a **ALEXANDER LOFTS**,
Appellees/Cross-Appellants.

No. 4D19-2211

[May 26, 2021]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 502016CA004267.

Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, for appellants/cross-appellees.

Todd R. Ehrenreich, David L. Luck, and Jenna L. Fischman of Lewis Brisbois Bisgaard & Smith, LLP, Coral Gables, for appellees/cross-appellants.

ARTAU, J.

In 2016, a brick wall from a neighboring building collapsed, causing it to fall upon a building owned by Five Solas, LLC ("owner"). The owner had leased the building to its affiliated law firm, William Price, P.A. ("lessee"). The collapse was so destructive that it rendered the building untenantable and displaced the lessee. The owner's building was covered by a replacement cost insurance policy which the owner had purchased from Foremost Insurance Company ("insurer"). However, the policy was subject to a liability limit for the replacement cost and a corresponding deductible. The owner's and lessee's resulting claims against the parties responsible for the collapse of the neighboring building ("tortfeasors") were determined by jury verdict, with the trial court disposing of post-verdict set-off claims.

The owner and lessee have asserted five issues on appeal. The tortfeasors, for their part, asserted a cross-appeal, but did not pursue it in their answer brief. While we affirm without further comment as to the

cross-appeal and two of the issues asserted by the owner and lessee, we reverse on the remaining three issues asserted by them and remand for the trial court to correct a scrivener's error in the final judgment that awards the entire recovery to the owner despite delineating $176,219.17 of the recovery for the lessee.

## First Issue: Replacement Costs Paid by Insurer

To compensate the owner, the insurer paid $430,518.25 ("building payout") representing the insurer's maximum liability pursuant to the insurance policy for the replacement cost of the building after subtracting the applicable deductible.

Despite the building payout, the owner and lessee proceeded with their claims against the tortfeasors, asserting that their insurance proceeds did not make them whole for the losses they incurred.

After bringing its own claim against the tortfeasors, the insurer settled with them and agreed, as part of its settlement, to assign any of their subrogation rights to the tortfeasors who stand in the insurer's shoes, so to speak, for purposes of this appeal. *See Despointes v. Fla. Power Corp.*, 2 So. 3d 360, 361 (Fla. 2d DCA 2008) (where the insurance company assigned its right of subrogation, the assignee "stepped into the shoes" of the insurer).

The jury determined that the replacement cost for the owner's building was $943,829, and the fair market value of the building was $535,000. In determining the set-off claims, the trial court subtracted the difference between the building payout for the partial replacement cost—$430,518.25—from the jury's determination of $535,000 as the fair market of the damaged building. Thus, the tortfeasors were only required to pay the building owner $104,481.75.

The building owner argues that it should be placed back in the position it was in before the building damage, and that it is entitled to the benefit of its bargain for having purchased replacement cost insurance. Conversely, the tortfeasors contend the trial court was correct to set-off the building payout from the jury verdict, without which the building owner would obtain a windfall or duplicative recovery.

This situation mimics the ancient parable of the blind men and the elephant. In this parable, blind men approach what they have heard is a strange animal in the center of town and begin to describe the creature. One touches the trunk and says that the animal must be like a thick

snake. Another touches a leg and says the animal must be like a tree trunk. Still another touches the tusk and thinks the animal must be like a spear. However, none of them see the whole picture, and consequently how all parts comprise the whole.

Both sides here point to different measures of damages, but each measure is a different part of the animal, as it were, while neither comprise the animal in its full form.

Replacement cost is what the building owner contracted for, but the insurance policy only covered a portion of the replacement cost because of the policy's liability limits. *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993) ("Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.").

On the other hand, the fair market value of the damaged building is what the tortfeasors must pay. *See Davey Compressor Co. v. City of Delray Beach*, 613 So. 2d 60, 61 (Fla. 4th DCA 1993) ("As a general rule, damages for injury to real property cannot exceed the value of the property."); *see also Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) ("In contrast to a replacement cost policy, actual cash value is generally defined as 'fair market value[.]'").

"'Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Trinidad*, 121 So. 3d at 438 (quoting *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983 (Fla. 3d DCA 1994)). Replacement cost covers the cost to replace the damaged structure on the same premises. *Id.* "In other words, replacement cost policies provide greater coverage than actual cash value policies because depreciation is not excluded[.]" *Id.* (citing *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008)).

Thus, the replacement cost was contractually obtained here to cover much more than the value of the prior structure. It covers the cost of replacing the old depreciated structure with a new building.

While the tortfeasors are correct that the building owner should not receive a windfall or duplicative recovery, the building owner is also correct that it is entitled to the benefit of its bargain from its purchase of the replacement cost insurance. Although the building owner could not be awarded more than the fair market value of the building from the tortfeasors, the owner was entitled to the benefit of its bargain from its

3

insurer because it purchased replacement cost insurance which pays to replace the building, rather than the value of the existing structure. *See Swindal*, 622 So. 2d at 470 ("Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts."); *see also Fla. Farm Bureau Ins. Co. v. Martin*, 377 So. 2d 827, 829 (Fla. 1st DCA 1979) (subrogation is not available simply because the insured had "'the foresight to obtain, and had paid the expense of procuring, insurance for his protection;'" it is only available "'after the insured has been fully indemnified.'" (quoting *DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill.*, 193 So. 2d 224, 227 (Fla. 3d DCA 1966)).

Florida adheres to the common law rule that an insurer does not have a right to subrogation against an insured who has not been made whole. *E.g., Humana Health Plans v. Lawton*, 675 So. 2d 1382, 1384 (Fla. 5th DCA 1996). In other words, Florida follows the general rule of subrogation that an insurer "'may recover from insured only the excess, which insured has received from the wrongdoer causing the loss, remaining after insured is fully compensated for his [or her] loss and the cost and expenses of the recovery thereof.'" *Martin*, 377 So. 2d at 829 (quoting *Cent. Nat'l Ins. Grp. v. Hotte*, 312 So. 2d 235, 237 (Fla. 1st DCA 1975)).

Accordingly, the trial court erred in limiting the jury's award against the tortfeasors to $104,481.75, by awarding a set-off for the difference between the building payout for its partial replacement cost—$430,518.25—and the jury's award of the fair market value of the building—$535,000.

These amounts were not awarded to compensate for the same damages. Instead, the insurer paid the construction cost of replacing the old structure with a new building, while the fair market value awarded against the tortfeasors only compensates for the damage to the old depreciated building.

Because it was incorrect to conflate the two different measures of damages, and the owner was entitled to be made whole under the common law rule before a subrogation right can inure to the insurer, the tortfeasors are only entitled to a set-off or subrogation claim as the insurer's assignees for any amounts exceeding the greater of the two measures of recovery.

Here, the jury found that the greater of the two measures of recovery was the replacement cost of $943,829. Because the combined amounts received from the tortfeasors and the insurer exceeded the total replacement cost determined by the jury by $21,689.25, the tortfeasors were only entitled to a set-off for that amount.

4

Therefore, we reverse the set-off which credited the replacement cost paid by the owner's insurer against the fair market value awarded against the tortfeasors by the jury. We remand for a set-off and judgment consistent with this opinion.

## Second Issue: Lost Rental Income

The second issue pertains to the trial court's set-off or reduction of $127,200 received by the lessee in business interruption damages from the $302,400 awarded by the jury for the building owner's lost rental income.

The $127,200 was paid to the displaced lessee by the insurer to cover the maximum amount allowed under the policy to cover the expense of renting a substitute leasehold from another landlord.

The building owner argues that while its lessee was reimbursed for some of the amounts it had to pay to another landlord to rent substitute space, the owner lost its rental income while the building was rendered untenantable.

The tortfeasors argue that because the building owner and the lessee have common ownership, the building owner did not ultimately lose any rental income. They allege an alter ego theory should entitle them to pierce the corporate veil because of the common ownership and affiliation between the building owner and the lessee.

We agree with the building owner's argument.

For the corporate veil to be pierced, a litigant would have to demonstrate the existence of improper conduct in the formation or use of the entity in question. *111 Props., Inc. v. Lassiter*, 605 So. 2d 123, 125 (Fla. 4th DCA 1992). Sole ownership interest of a corporate entity does not entitle a claimant to pierce the corporate veil, absent some fraudulent purpose or conduct. *Rashdan v. Sheikh*, 706 So. 2d 357, 357-58 (Fla. 4th DCA 1998).

A hallmark of corporate law is the feasibility, legality, and propriety of different entities for separate business or economic purposes. *See generally Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities."); *see also Am. States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984) ("The general rule is that corporations are legal entities separate and

5

distinct from the persons comprising them. Absent fraud, the corporate veil is not pierced." (citation omitted)).

The tortfeasors here did not present any competent, substantial evidence of any fraudulent purpose or conduct that would overcome the benefit of the bargain which the building owner had with its affiliated lessee, nor was that issue presented for a jury determination. *See Church of Scientology of Cal. v. Blackman*, 446 So. 2d 190, 192 (Fla. 4th DCA 1984) ("Normally, the question of whether a corporation is an instrumentality or an alter ego of another corporation is an issue of fact for the jury.").

Accordingly, the trial court erred in setting off the jury award of lost rental income based on the amount which the insurer paid to rent a substitute leasehold from another landlord for the displaced lessee. While the amount which the insurer paid for a substitute leasehold compensated the lessee for part of its damages, it did not make the building owner whole for the lost income it suffered while its building remained untenantable.

Therefore, we reverse the set-off or reduction of the lost rental income awarded by the jury to the building owner, and remand for entry of judgment consistent with this opinion.

### Third Issue: Prejudgment Interest

As to the third issue, the parties agree that the trial court should have awarded prejudgment interest because the loss here was that of a vested property right as of a date certain. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) (prejudgment interest is properly awarded in a case involving the negligent destruction of a building by fire on a date certain).

"Once a verdict has liquidated the damages as of a date certain, computation of prejudgment interest is merely a mathematical computation. There is no 'finding of fact' needed. Thus, it is a purely ministerial duty of the trial judge or clerk of the court to add the appropriate amount of interest to the principal amount of damages awarded in the verdict." *Id.*

We agree with the parties and remand the denial of prejudgment interest for the trial court to make the appropriate computation.

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion and correction of the scrivener's error.*

6

WARNER and MAY, JJ., concur.

\*       \*       \*

*Not final until disposition of timely filed motion for rehearing.*