WAUKESHA SAVINGS, BUILDING & LOAN ASSOCIATION, Plaintiff, vs. HAMILL and others, Defendants : HAMILL, Defendant and Respondent, vs. KUCHLER and wife, Defendants and Appellants.

*October 15, 1930—February 10, 1931.*

416

418

*Alvin Iuedes* of Milwaukee, for the appellants Kuchler (*Alma Barry* of Milwaukee, of counsel on motion for rehearing).

For the respondent Hamill there was a brief by *Harvey C. Hartwig,* attorney, and *Charles F. Puls, Jr.,* of counsel, both of Milwaukee, and oral argument by *Mr. Hartwig.*

The following opinion was filed November 11, 1930:

NELSON, J. The facts, though quite involved, are substantially undisputed. The sole question presented is whether, under all the circumstances, the equities of defendant Hamill are superior to the equities of defendants Kuchler, vendees under the land contract. The trial court found that the equities of defendant Hamill were superior to those of the defendants Kuchler for the reason that Mrs. Hamill was only an "accommodation deeder" to Powell and that her property was not necessary in paying his debt. With the conclusion of the trial court we are unable to agree. It must be remembered that Mrs. Hamill was the mother of Mrs. Powell and the mother-in-law of Russell Powell. The reason for the manipulation of lots 4 and 5, as appears in the statement of facts, is not apparent. It is apparent, however, from the record that whatever was done was done by Mrs. Hamill for her own benefit or for the benefit of the Powells, who were closely related to her. Mrs. Hamill deeded the south sixty feet of lot 5 to the Powells undoubtedly knowing that the Powells were to enter into a land contract with the Kuchlers. She undoubtedly knew that the contract was thereafter entered into; that the Kuchlers, after making the down payment of $2,500, were let into possession and thereafter paid to the Powells additional substantial sums. No other conclusion can be drawn from the record herein.

No claim is made by Mrs. Hamill that she had no knowledge of the execution of the deed of the south half of lot 5

to the Powells or that such deed was not freely and voluntarily executed and delivered. No claim is made by her that she had no knowledge as to the land contract entered into by her daughter and son-in-law with the Kuchlers. No claim is made by her that the deed was executed by mistake or procured by undue influence, duress, or as a result of bad faith or fraud. It appears quite clearly that the deed to the Powells was executed and delivered in accordance with her wishes and plain intention. There is nothing in the record suggesting that the deed to the Powells, which placed them in a position to contract with the Kuchlers, was not freely and voluntarily given by Mrs. Hamill and with full knowledge of its legal effect. There can be no question as to Mrs. Hamill's full knowledge as to the land contract and as to the payment of large sums of money thereunder to the Powells.

As between the equities of Mrs. Hamill and the Kuchlers, under all the circumstances which the record reveals, we have no hesitation in concluding that the equities of the Kuchlers were superior to those of Mrs. Hamill; that Mrs. Hamill, under the circumstances, should shift the $4,200 loss to the Kuchlers seems both unjust and inequitable.

It is probably unnecessary to prolong this opinion, having already stated our conclusion as to the merits of this controversy, but it may not be amiss to review some of the legal propositions which have influenced us in coming to this conclusion.

In the first place, it appears that when Mrs. Hamill accepted the deed from the Powells on or about the 15th day of February, 1924, she took it subject to the payment of the plaintiff's $8,000 mortgage which she assumed and agreed to pay. As a result of such transaction defendant Hamill became primarily liable for said loan. *Stites v. Thompson,* 98 Wis. 329, 73 N. W. 774; *Bishop v. Douglass,* 25 Wis. 696. When this liability was once created by the acts of the im-

mediate parties to the transaction and the operation of the law therein, neither one nor both of such parties could thereafter change the situation as regards the third person without his consent. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440; *Fanning v. Murphy,* 117 Wis. 408, 94 N. W. 335.

The record shows that when Mrs. Hamill accepted the deed she became bound thereby and the $8,000 debt became her own debt. The court found that the defendant Hamill was personally liable upon the debt created by the $8,000 mortgage and for any deficiency arising thereon after the sale of the premises. While it is true that she did not appear in the foreclosure action, this cannot in any manner invalidate in any way the judgment which was entered and from which no appeal was taken.

The Kuchlers appeared in the action, answered, and offered testimony upon the hearing demanding that the parcel of land covered by their land contract should be sold last. That the court at that time clearly recognized their rights and attempted to protect these rights as far as was possible by adjudging the order of the sale of the several parcels of land is perfectly clear. No plausible explanation of the judgment can be suggested except that the equities of the Kuchlers strongly appealed to the trial court and required that the property covered by the contract should be sold only in case of necessity to provide sufficient funds to discharge the mortgage indebtedness. There can be no serious dispute as to the reasons for the particular order of sale found in the judgment. When the south half of lot 5 was finally sold pursuant to the judgment in order to provide sufficient moneys to satisfy the amount adjudged to be due the plaintiff, together with interest and costs, the Kuchlers' lien, as vendees, to the surplus, in equity and in good conscience, attached, subject of course to any prior liens.

The law is well established that a purchaser under a land contract has an equitable lien on the property covered by the contract to the extent of his payments thereunder. *Wickman v. Robinson,* 14 Wis. 493. In *Harris v. Halverson,* 192 Wis. 71, 211 N. W. 295, it was held that "the relation between the parties is analogous to that of equitable mortgagor and mortgagee. The former has an equity of redemption, the latter has the correlative right of foreclosure." It is also quite generally held that the equitable lien of the vendee passes and attaches to the surplus of the proceeds received from the sale of the mortgaged premises. *Durling v. Stillwell,* 74 N. J. Eq. 697, 69 N. E. 978; *Davison v. MacDonald,* 124 Misc. 726, 209 N. Y. Supp. 145. In the former case it was held that "the lien of a judgment on lands is subject to the equitable rights of a party in occupation thereof under a prior land contract to purchase the same from the judgment debtor. The docketing of the judgment is not notice thereof to such purchaser; and payments subsequently made by him to the judgment debtor pursuant to his contract, without actual notice of the judgment, are valid as against its lien upon the land." In the latter case it was held, "a surplus arising upon a sale on foreclosure takes the place of the equity of redemption; and for the purpose of determining its distribution among those entitled thereto it is regarded as land," and that "a vendee who has made a down payment has an equitable lien on the property for the amount paid, although he has not been let into possession." See, also, 42 Corp. Jur. pp. 310, 317, § 202.

It is, however, suggested that the Hardy-Ryan Abstract Company mortgage was recorded prior to the time when the land contract was entered into and for that reason the Hardy-Ryan Abstract Company has rights in the surplus that are superior to the rights of the defendants Kuchler. This would no doubt be true if the Hardy-Ryan mortgage had not

specifically provided that "the trustee agrees to release certain property, being the south half of lot 5 on parcel 2, upon payment of $2,000, and the cottage property, being lot 4 on parcel 2, upon payment of $3,500," and if it did not further appear that the Hardy-Ryan Company, at the time of the determining of the rights to the surplus, had not already been paid by defendant Hamill a sum of money in excess of the sum of the two amounts required by the specific terms of the mortgage to release the two properties from the lien of the mortgage.

The only remaining claim of defendant Hamill undisposed of is based upon the fact that prior to the determination of the rights to the surplus she had paid to Hardy-Ryan Abstract Company, on the principal due it, about $6,000, and as a consequence of such payments ought in some way or on some theory to be subrogated to the rights of Hardy-Ryan Abstract Company under its mortgage, which constituted originally a lien prior to any lien of defendants Kuchler as vendees. We have concluded, however, that Mrs. Hamill, under the circumstances, cannot be so subrogated. The undisputed facts show that all Mrs. Hamill did was to pay a part of her own debt, and on no sound theory can she be subrogated. This court has stated the governing principles of the subject of subrogation. "It is wholly a creature of equity,—a mere means by which the substantial ends of justice may be accomplished. If a person pays off a lien claim on property for which he is not but another is liable so that such other would derive the benefit thereof, if his interest in the property were entirely relieved from such lien, and such person acts in the matter, not as a mere volunteer, but to protect his own interest in such property, such interest being legal or equitable, and either present or contingent, equity immediately operates in favor of such person by preserving such lien claim to him with the same right to en-

force it as the original owner possessed, to the extent that such person would otherwise suffer loss to such other's gain." *Charmley v. Charmley,* 125 Wis. 297, 304, 103 N. W. 1106.

"Subrogation is based on rules of equity. It is a creation of the law whereby the substantial ends of justice may be accomplished regardless of contract relations. If a person for the protection of his title to property is compelled to pay off a lien thereon for a debt which he is not liable for, so that another having an interest in the property and who stands prior in obligation to pay the debt, either because of being the debtor or being more immediate to the creator of the lien, will be relieved of the burden, equity immediately operates in favor of the payor, preserving the lien for his protection to the extent that he would otherwise suffer loss to such other's gain." *Poluckie v. Wegenke,* 137 Wis. 433, 437–8, 119 N. W. 188.

To the same effect is *Van Valkenburg v. Jantz,* 161 Wis. 336, 341, 154 N. W. 373. The record in this case shows that Mrs. Hamill merely paid a part of her own debt when she made payments to the Hardy-Ryan Abstract Company on her own mortgage, the cash proceeds of which, in large part, were used by her in erecting a building on her own land. The circumstances shown by the record do not satisfy the logic of the doctrine of subrogation.

There is another well established reason why the doctrine of subrogation cannot be applied to this case, and that is that subrogation does not arise until the debt has been fully paid. As was said in *Defiance Machine Works v. Gill,* 170 Wis. 477, 483, 175 N. W. 940, "one of the very first essentials to the enforcement of the right of subrogation is proof of the payment of the debt. Until that is done the right of subrogation is a mere inchoate right and cannot be enforced." The law laid down in this case was recently

approved in *O'Neil v. Russell,* 192 Wis. 141, 212 N. W. 278.

The cases just stated are in complete harmony with the general rule as stated in 25 Ruling Case Law, p. 1318: "The general rule is that a person is not entitled to be subrogated to a creditor's securities until the claim of the creditor against the debtor to secure which the securities were given has been paid in full; the creditor in the meantime is left in control of the debt and all the remedies for collection. A *pro tanto* assignment or subrogation will not be allowed. The reason for this rule is that if the surety, upon making a partial payment, becomes entitled to subrogation *pro tanto,* and thereby becomes entitled to the position of an assignee of the property to the extent of such payment, it would operate to place such surety upon a footing of equality with the holders of the unpaid part of the debt, and, in case the property was insufficient to pay the remainder of the debt for which the guarantor was bound, the loss would logically fall proportionately upon the creditor and upon the surety. Such a result would be grossly inequitable. The liability of a surety for the remainder of the debt exists as well after as before a partial payment, and until the entire debt is paid the surety has no such equity as will entitle him to the active aid of a court of equity."

It is further stated in 25 Ruling Case Law, p. 1321, that "subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having equal or superior equities, or where it will operate to defeat a legal right."

For the reasons stated it is held that the lien of the Kuchlers gave them rights in the surplus fund which were superior to any claim or right of the defendant Hamill thereto. The liens of the three judgment creditors which

were found by the court to be prior to the rights of defendant Hamill or defendants Kuchler in the surplus are fully approved.

*By the Court.*—The order of the county court of Waukesha county is reversed and said court is ordered to direct the clerk of said court to pay to A. L. Kiefer Company or its attorney, G. Holmes Daubner, the sum of $97.48, together with interest thereon from and after the 7th day of May, 1925, the date of entry of judgment; that he further pay to Mary K. Schoen or her attorney, Newton W. Evans, the sum of $423.66, together with interest thereon from and after the 14th day of September, 1925, the date of entry of her judgment; that he further pay to W. J. Heinz Company or its attorney, George E. Robinson, the sum of $76.70, together with interest thereon from and after the 13th day of December, 1924, the date of entry of its judgment; that he further pay to Edward F. Kuchler and Margaret Kuchler, his wife, or their attorney, Alvin Juedes, the sum of $4,200, and that he further pay to Maria Hamill or her attorney, Harvey C. Hartwig, the remainder of said surplus, including any interest which said surplus may have earned while in the hands of said clerk.

The following opinion was filed February 10, 1931:

NELSON, J. (*on rehearing*). The court has given careful consideration to the several contentions of defendant Maria Hamill in support of her petition for a rehearing, with the result that only one of them seems to merit consideration at this time. The matter of interest on defendant Kuchlers' land contract from its date to the date of the sale under the foreclosure proceedings was not taken into consideration in determining the equities of the several parties to the surplus

on foreclosure. It appears that no interest was ever paid on the contract. Payments on the principal sum of $9,000 were made as follows:

| | | |
|---|---:|---:|
| April 15, 1926 | $2,500 | 00 |
| April 30, 1926 | 300 | 00 |
| November 3, 1926 | 300 | 00 |
| November 10, 1926 | 300 | 00 |
| November 18, 1926 | 300 | 00 |
| March 18, 1927 (to Hardy-Ryan Abstract Company) | 500 | 00 |
| Total | $4,200 | 00 |

Computing the interest on the unpaid balance from April 15, 1926, to June 8, 1929, the date of sale, we find it to be $1,156.70. At the sale defendants Kuchler were compelled to bid $9,800 in order to protect their land contract and to obtain the property covered thereby. This required the Kuchlers to pay $800 in excess of the contract price. We think it equitable to add this $800 to the $4,200 principal paid by the Kuchlers on the land contract and to deduct as a proper charge against them the unpaid interest amounting to $1,156.70, leaving an actual net balance to be paid to the Kuchlers from the surplus, amounting to $3,843.30, instead of $4,200 as heretofore decided and adjudged. In arriving at this computation we consider the $500 paid by the Kuchlers to Hardy-Ryan Abstract Company on March 18, 1927, as having been paid by the Kuchlers on the contract. The Kuchlers are therefore getting full credit for this $500 out of the surplus adjudged to them and they have no further interest or claim to said sum of $500 paid to the Hardy-Ryan Abstract Company.

The mandate of the court heretofore entered is therefore modified to read as follows:

*By the Court.*—The order of the county court of Waukesha county is reversed, and said court is ordered to direct

the clerk of said court to pay to A. L. Kiefer Company or its attorney, G. Holmes Daubner, the sum of $97.48, together with interest thereon from and after the 7th day of May, 1925, the date of entry of judgment; that he further pay to Mary K. Schoen or her attorney, Newton W. Evans, the sum of $423.66, together with interest thereon from and after the 14th day of September, 1925, the date of entry of her judgment; that he further pay to W. J. Heinz Company or its attorney, George E. Robinson, the sum of $76.70, together with interest thereon from and after the 13th day of December, 1924, the date of entry of its judgment; that he further pay to Edward F. Kuchler and Margaret Kuchler, his wife, or their attorney, Alvin Juedes, the sum of $3,843.30; and that he further pay to Maria Hamill or her attorney, Harvey C. Hartwig, the remainder of said surplus, including any interest which said surplus may have earned while in the hands of said clerk.