GARRITY, and wife, Plaintiff-Appellants, v. RURAL MU-
TUAL INSURANCE COMPANY, Defendant and Third-
Party Plaintiff-Respondent: RURAL MUTUAL INSUR-
ANCE COMPANY, Third-Party Defendant-Respondent.

*No. 75–178. Argued November 30, 1976.—Decided May 17, 1977.*
(Also reported in 253 N. W. 2d 512.)

For the appellants there were briefs by *Kaftan, Kaftan, Kaftan, Kuehne & Van Egeren, S. C.* and oral argument by *Arthur Kaftan,* all of Green Bay.

For the respondent there was a brief by *Everson, Whitney, Everson, Brehm & Pfankuch, S. C.* and oral argument by *John Herald,* all of Green Bay.

DAY, J.   The question is: When an insured's loss exceeds the amount recoverable under a standard fire insurance policy written in conformity with section 203.01, Wis. Stats. 1969,[1] what are the respective rights of the insured and the subrogated insurer to the damages recovered from the tort-feasor who caused the loss?

We hold the insured is entitled to be made whole before the insurer may share in the amount recoverable from the tort-feasor.  We reverse the trial court which held the insurer has a priority to the amount recoverable from a tort-feasor once the policy limits are paid to the insured.

[1] Repealed Chapter 375, section 18, Laws of 1975.

The facts were stipulated pursuant to section 269.01, Stats. 1973.[2] George L. Garrity and Helen Garrity, his wife, were at all times relevant to this action insured under a fire insurance policy with Rural Mutual Insurance Company. It is also stipulated that on August 28, 1969 the Garritys suffered a fire loss to their dairy barn and other property for which they were paid the sum of $67,227.12 by Rural Mutual which constituted the limits payable under the policy. The total amount of their loss was in excess of that amount although the amount of such loss is not stipulated to. Bernard Bowers and Norman Bowers, a co-partnership doing business as Bowers Brothers Feed Mill, on the date in question owned a truck which was likewise insured with Rural Mutual under which the company agreed to pay claims which the Bowers became legally liable to pay arising out of the use, operation and maintenance of the truck. The coverage on the truck was $25,000.

The complaint in this action alleges that a truck belonging to Bowers and operated by an employe while delivering feed to the Garritys' barn, was operated in a negligent manner which resulted in a fire being started causing the loss complained of. The complaint alleges that the damages are in the amount of $110,000. The complaint against the Bowers also named their insurance carrier, Rural Mutual. Rural Mutual denied that the negligent operation of the truck caused the fire and filed a third-party complaint against themselves in their role as insurance carrier of the Garritys and

---

[2] "269.01. *Agreed Case; Affidavit; Judgment.* Parties to a controversy which might be the subject of a civil action, may agree upon a verified case containing the facts upon which the controversy depends and submit the same to any court which would have jurisdiction if an action were brought. The court shall, thereupon, render judgment as in an action. Judgment shall be entered and docketed as other judgments and with like effect, but without costs for any proceeding prior to the trial."

asked for a determination of the rights of Rural Mutual as a third-party defendant to any sums that Rural Mutual might become liable to pay.

It was stipulated between the parties that the Bowers be dropped as defendants in the action.

Lines 162 through 165 of the standard fire insurance policy incorporated by a reference in section 203.01, Stats. provides as follows:

*"Subrogation.* This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

The trial court found that the Garritys executed a subrogation receipt "whereby the fire insurance company became subrogated to all of the rights, claims and interests which the plaintiffs had against any person or corporation liable for the loss . . . ."

On May 2, 1975 the trial court entered an interlocutory judgment granting Rural Mutual as third-party defendant the right of priority in any recovery of monies from the Bowers and Rural Mutual as their insurer up to the sum of $67,227.12. On May 28, 1975, the court entered a judgment that among other things dismissed on the merits the action brought by the plaintiffs against Rural Mutual Insurance Company both as a defendant and as a third-party defendant. It is from the interlocutory judgment of May 2, 1975 and that part of the judgment of May 28, 1975, that the Garritys appeal.

Assuming that the Bowers should be found causally negligent with respect to the fire, under the ruling made by the trial court Rural Mutual would have to pay nothing more to the Garritys. This is because the insurer, as subrogee, was determined to have priority in recovering the $67,227.12 it had already paid, which amount was more than what was possibly recoverable under the

Bowers' policy. But we hold that the Garritys must first be made whole before the insurer is entitled to share in the amount recoverable from the tort-feasor; damages found in a subsequent trial in addition to those already paid by Rural Mutual would inure to the benefit of the Garritys to the extent necessary to make them whole.

Under common law subrogation, the subrogor (here the insured) must be made whole before the subrogee (insurance company) may recover anything from the tort-feasor. We conclude that the subrogation clause contained in the standard fire insurance policy and set forth above did not change the substantive common law rights of the insured.

Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer. *Employers Ins. of Wausau v. Sheedy,* 42 Wis.2d 161, 170, 166 N.W.2d 220 (1969) ; *Interstate Fire & Casualty Co. v. Milwaukee,* 45 Wis.2d 331, 334, 173 N.W.2d 187 (1970). Subrogation has also been described as putting one to whom a particular right does not legally belong in the position of the legal owner of the right. Insofar as a new right is created in favor of the subrogee, "the original right measures the extent of the new right." 4 *Williston on Contracts* sec. 1265, p. 844 (Third ed. 1967). The purpose of the doctrine is to avoid unjust enrichment. *New Amsterdam Cas. Co. v. Acorn Products Co.,* 42 Wis.2d 127, 132, 166 N.W.2d 198 (1969) ; *Northwestern N.C. Co. v. State A. & C. Under,* 35 Wis.2d 237, 242, 151 N.W.2d 104 (1967).

Ordinarily, subrogation does not arise until the debt has been fully paid. *Hamill v. Kuchler,* 203 Wis. 414,

425, 232 N.W. 877 (1931); *Monart Motors v. Home Indemnity Co.*, 1 Wis.2d 60, 607, 85 N.W.2d 478 (1957). Various reasons are given for the rule, the primary one being set out in *Hamill, supra,* that a surety who is subrogated upon partial payment of the debt becomes a competitor with the creditor (here the insured). This would be less acceptable in a noninsurance case than here, because in a noninsurance case, "the liability of a surety for the remainder of the debt exists as well after as before partial payment, and until the entire debt is paid, the surety has no such equity as will entitle him to the active aid of a court of equity." *Hamill, supra,* p. 426. In the instant case, however, the insurer's liability is limited and does not exist after payment according to the terms of the policy.

Nonetheless, most of the insurance cases follow the common law rule. It has been held that the cause of action (against the tort-feasor) is indivisible and the owner of the policy should be first to make good his own loss; where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume. *St. Paul Fire & Marine Ins. Co. v. W. P. Rose Supply Co.*, 19 N.C. App. 302, 198 S.E.2d 482, 484, cert. den. 284 N.C. 254, 200 S.E.2d 655.

In accord with the general rule that there is no subrogation until the insured has been made whole *see, Oakland County v. Central West Casualty Co.*, 266 Mich. 438, 254 N.W. 158, 160 (1934) affd. on reh. 268 Mich. 117, 255 N.W. 733; *Propeck v. Farmers' Mut. Ins. Assn. of Grayson County*, 65 S.W.2d 390 (Texas Ct. of Cir. Appeals 1933); *Washtenaw Mut. Fire Ins. Co. v. Budd,* 208 Mich. 483, 175 N.W. 231 (1919).

In *Williston, supra,* sec. 1269, the author states:

"The surety's right of subrogation does not arise ordinarily until the debt is paid in full. A partial payment of the debt, even though it may be the full amount

for which the surety has bound himself, will not entitle him to subrogation to the creditor's rights and securities."

And at §1273:

"There is no equity on which to base the deprivation of the creditor of any of his legal rights for the benefit of the surety until he has been paid in full."

*Couch on Insurance,* sec. 61.61 (2d ed. 1968), states:

"In contrast with the situation in which the insurer has not discharged its obligation in full, the insurer may in a given case have made the full payment required of it by its contract of insurance but this amount is not adequate to indemnify the insured in full. In such an instance, it has been held, in absence of waiver to the contrary, that no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses. In other words, the insurer has no right as against the insured where the compensation received by the insured is less than his loss."

*See also,* 83 C.J.S. *Subrogation,* sec. 10, p. 607; 44 Am. Jur.2d *Insurance* sec. 1846, p. 773.

Since the parties have stipulated that the Garritys have not been made whole for the loss they have suffered, under common law principles of subrogation, Rural Mutual's right to share in the $25,000 recoverable from themselves as the insurer of the tort-feasor is secondary to the insured's right to recovery.

The question is, has the insurance contract changed the common law rule?

This court has held that subrogation is recognized or denied upon equitable principles without differentiation between "legal subrogation" which arises by application of principles of equity and "conventional subrogation" arising from contract or the acts of the parties. *Ameri-*

*can Ins. Co. v. Milwaukee,* 51 Wis.2d 346, 351, 352, 353, 187 N.W.2d 142 (1971). Thus it has been held that the conventionally subrogated or contractural insurer has no share in the recovery from the tort-feasor if the total amount recovered by the insured from the insurer does not cover his loss. *Maryland Casualty of Baltimore, Md. v. Cincinnati C., C. & St. L. Ry. Co.,* 74 Ind. App. 272, 124 N.E. 774 (1919) (a workman's compensation case); *Providence Washington Insurance Co. v. Hogges,* 67 N.J. Super. 475, 171 A.2d 120 (1961); *Hardware Dealers Mutual Fire Ins. Co. v. Ross,* 129 Ill. App.2d 217, 262 N.E.2d 618 (1970); *Lyon v. Hartford Accident & Indemnity Co.,* 25 Utah 2d 311, 480 P.2d 739 (1971).

In *American Surety Co. of New York v. Westinghouse Electric Mfg. Co.,* 296 U.S. 133, 137, 56 S. Ct. 9, 11, 80 L. Ed. 105 (1935), where the surety's obligation was statutorily mandated, Justice CARDOZO wrote:

"A surety who has undertaken to pay the creditors of the principal, though not beyond a stated unit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full."

The parties' rights here are determined by the subrogation clause in the policy derived from sec. 203.01, Stats. 1969. We find nothing in this subrogation clause that changes the common law rule. It is alleged that the Garritys signed a "subrogation receipt." However, no such receipt could change the rights of the parties as determined by the statutory provision respecting subrogation. While the receipt is not in the record, the trial court stated that the receipt read as follows:

" 'In consideration of and to the extent of said payment, the undersigned hereby subrogates said insurance company to all the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above, and authorizes the

said insurance company to sue, compromise or settle, in the insured's name or otherwise, all such claims, and to execute and sign releases and acquitances and endorse checks or drafts given in settlement of such claims in the name of the undersigned with the same force and effect as if the undersigned executed or endorsed them.' "

The trial court relied on two cases in Ohio which held that a subrogation clause in the contract created a priority in the insurer and also on a California intermediate court decision which relied on the Ohio cases. *Peterson v. Ohio Farmers Ins. Co.*, 175 Ohio St. 34, 191 N.E.2d 157 (1963); *Ervin v. Garner*, 25 Ohio St.2d 231, 54 Ohio Op.2d 361, 267 N.E.2d 769 (1971); *Shifrin v. McGuire & Hester Construction Co.*, 239 Cal. App.2d 420, 48 Cal. Rptr. 799 (1966); *accord Travelers Indemnity Co. v. Ingebretsen*, 38 Cal. App.3d 858, 113 Cal. Rptr. 679 (1974).

We do not find the Ohio or California cases cited persuasive. The rationale of the *Peterson* case from Ohio was stated by that court:

". . . The insured's conveyance of all right of recovery up to a certain limit, viz., the extent of the insurer's payment in settlement of the insured's claim, can mean only that the assignee is the owner of all the insured's rights of recovery until he is paid. The assignee, being the owner of all of insured's right of recovery, must have priority in payment out of the funds recovered. Otherwise, the words 'all right of recovery' are without meaning." 191 N.E.2d at 159.

The subrogation provisions in the policy before us and the one in *Peterson* are identical. While the *Peterson* rationale attributes substantive rights to an assignee to a cause of action which a subrogee does not enjoy, we regard the differentiation between subrogation and assignment in this situation as purely procedural. When it is established that the insured "conveyed" all right of recovery, it does not follow that the insurer must have

priority in payment out of funds from the tort-feasor before the insured is made whole.

We have disapproved of the language in *Patitucci v. Gerhardt,* 206 Wis. 358, 362, 204 N.W. 385 (1932) that a subrogee is an "owner" of the insured's claim. In *Heifetz v. Johnson,* 61 Wis.2d 111, 120, 211 N.W.2d 834 (1973) we said, "(I)t is better to think of the insurer as an assignee of part of the claim than to speak of the insured and the insurer as joint owners of the claim."

As is stated in *Couch on Insurance,* 2d sec. 61.105, p. 297:

"When the right of the insurer to subrogation is formalized by the execution of an express assignment of the claim against the tort-feasor, the status of the insurer is nevertheless that of a subrogee rather than an assignee. The assignment adds nothing to the rights vested in the surety by the doctrine of subrogation.

". . .

"When the insurer is entitled to subrogation and likewise holds an assignment from the insured, it stands, by definition, in the position of both an assignee and a subrogee. The fact that it does so does not affect its right to recover from a tort-feasor."

The difference between an assignment and an equitable right to a cause of action is that the express assignment "has the effect of benefiting the insurer by making it unnecessary for it to prove the existence of the facts justifying subrogation, for it can rely on the express assignment." *Id.,* sec. 61.106.

The insurer calls to our attention the case, *Morateck v. Milwaukee Automobile Mut. Ins. Co.,* 34 Wis.2d 95, 148 N.W.2d 704 (1967). However the court there made it clear that the terms of the policy were irrelevant to the appeal and that the decision was limited to construing an order of the trial court entered in the action.

We hold that because the contract here contains no language to the contrary, the normal rule of subrogation

applies and the subrogee has no right to share in the fund recovered from the tort-feasor until the subrogor is made whole.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.