SHIRLEY S. ABRAHAMSON, J.
¶ 57. (concurring in part and dissenting in part). The instant case focuses on the interplay of subrogation and the made whole doctrine. Subrogation enables an insurance company that has paid its insured's loss pursuant to its policy to recoup that payment from the party responsible for the loss.[1] The made whole doctrine limits an insurance company's rights to subrogation in recognition of the injured insured's right to obtain full compensation for his or her losses.
¶ 58. A tension exists between the two doctrines.
¶ 59. The made whole doctrine is an equitable limitation on subrogation. Indeed, the court has called the made whole doctrine "an antisubrogation rule."[2] *343 The made whole doctrine, simply and generally stated, is "that there is no subrogation until the insured has been made whole,"[3] that is, an insurer may not recover payments from the tortfeasor or the tortfeasor's insurer until the insured has been compensated for all elements of damages he or she sustained.
f 60. The limitations on subrogation imposed by the made whole doctrine exist to prevent the inequitable prospect of an insurance company competing with its insured for funds when the insured has indisputably not been made whole.[4] The court has explained: "Where either the [insurance company] or the insured must to some extent go unpaid, the loss should be borne by the [insurance company] for that is a risk the insured has paid it to assume."[5]
¶ 61. Numerous cases focus on the interplay of subrogation and the made whole doctrine in a variety of fact situations. Because the essence of the case law is that equitable principles apply to subrogation and the made whole doctrine,[6] these cases turn on their specific facts.
¶ 62. Although the case law is not easy to follow, certain principles are very clear: Subrogation and the made whole doctrine are equitable doctrines. There is *344 no subrogation until an insured is made whole. Subro-gated insurance companies should not compete with their insureds for limited settlement funds.
¶ 63. The undisputed facts here are that Dufour recovered from the tortfeasor's insurance company, American Standard, and his insurance company, Dairyland, a total of $200,000 for bodily injuries stemming from a motorcycle accident. This sum did not cover Dufour's full losses for bodily injuries.
f 64. In addition, Dairyland paid Dufour the sum of $15,589.86, to compensate for damages to Dufour's motorcycle.
¶ 65. Based on this payment for damages to the motorcycle, Dairyland sought reimbursement for the $15,589.86 from American Standard. Under American Standard's policy insuring the tortfeasor, American Standard was liable to the injured person for property damage caused by American Standard's insured (the tortfeasor).
¶ 66. After Dairyland was reimbursed $15,589.86 by American Standard, Dufour sought this $15,589.86 from Dairyland on the grounds that he was not made whole.[7]
*345 ¶ 67. The issue in the instant case is who is entitled to this $15,589.86 — Dufour, or Dairyland, his insurance company — given that Dufour has not been fully compensated for his bodily injuries from the accident.
f 68. Contrary to the majority opinion's assertions, in the instant case, the insured and his insurance company are competing for a limited pool of funds that is not sufficient to satisfy both the insured's losses and the insurance company's, subrogation interest. An overriding concern of the made whole doctrine is the "inequitable prospect of insurance companies attempting to take the funds that should have gone to the insured."[8] The majority opinion ignores this competition for the funds, but "[t]he practical competition between an insured and the subrogated insurer is an equitable factor we cannot ignore."[9]
¶ 69. I dissent in part because I would affirm that part of the decision of the court of appeals holding that the made whole doctrine applies in the instant case and that Dairyland is barred from retaining the $15,589.86. This result is just and equitable under the circumstances.
¶ 70. Although "Wisconsin decisional law has done more to influence the expansion of the made whole doctrine than that of any other jurisdiction,"[10] recent Wisconsin cases are chipping away at the doctrine. The majority opinion in the instant case continues this process of chipping away and in so doing, fails *346 to clarify the already messy interplay between subro-gation and the made whole doctrine in Wisconsin.[11] I disagree with chipping away at the made whole doctrine.
f 71. I concur in part, however, because I agree with the majority opinion's conclusion that Dairyland did not act in bad faith when it denied Dufour's claim. I do not agree with the majority's discussion of this issue. I conclude that Dairyland had a reasonable basis *347 "to conclude that [its insured's] claim is fairly debatable and that therefore payment need not be made on the claim."[12]
¶ 72. Accordingly, I dissent in part, concur in part, and write separately.
I — I
¶ 73. I begin with the undisputed facts and the issue presented.
¶ 74. Dennis Dufour was seriously injured in a motorcycle accident. Dufour's bodily injuries exceeded $200,000. Dufour's property damage, namely damage to his motorcycle, amounted to $15,589.86.
¶ 75. Dairyland paid Dufour, its insured, $100,000, its policy limit for underinsured motorist coverage, for his bodily injuries. American Standard, the tortfeasor's insurance company, paid Dufour $100,000, its liability policy limit, for his bodily injuries.
¶ 76. Dairyland also paid Dufour $15,589.86 for the damage to his motorcycle.
¶ 77. As a result, Dufour received the full amount of his property damage from his insurance company. Dufour has not, however, received full compensation for his bodily injuries. He has not been made whole for all bodily injuries he sustained in the motorcycle accident.
¶ 78. After paying Dufour its $100,000 policy limit for bodily injury and $15,589.86 for his property damage, Dairyland sought and obtained in subrogation from American Standard, the tortfeasor's insur- *348 anee company, $15,589.86 — the sum Dairyland paid Dufour for damage to his motorcycle. Obviously in paying Dairyland $15,589.86, American Standard agreed that its policy obligated it to pay Dufour for property damage to his motorcycle.
¶ 79. The central question presented in the instant case is who is entitled to the $15,589.86 obtained by Dairyland from American Standard: Dairyland or Dufour? The answer hinges on whether Dufour has been "made whole," the general rule being that "there is no subrogation until the insured has been made whole,"[13] in light of the equities of this particular fact situation.
¶ 80. I turn now to applying subrogation and the made whole doctrine in the instant case.
¶ 81. A premise of the made whole doctrine, as we have previously stated, is that subrogation does not ordinarily arise until the loss has been fully paid. When speaking of the loss in a tort case, "the loss" refers to all damages arising from a single occurrence. Considering all damages arising from a single occurrence as "the loss" is in keeping with the rule that a cause of action in tort includes all elements of damages.[14]
¶ 82. In the instant case, it is undisputed that Dufour has not been made whole for "all the elements *349 of damages" he sustained as the result of the accident. Dufour's bodily injuries exceeded the $200,000 he received.
¶ 83. Since our seminal cases applying the made whole doctrine, Rimes v. State Farm Automobile Insurance Co., 106 Wis. 2d 263, 275, 316 N.W.2d 348 (1982), and Garrity v. Rural Mutual Insurance Co., 77 Wis. 2d 537, 542-43, 253 N.W.2d 512 (1977), this court has made clear that the made whole doctrine bars subro-gation unless "the insured has been completely compensated for all the elements of damages, not merely those damages for which the insurer has indemnified the insured."[15]
¶ 84. After this court decided Garrity and Rimes, the court clarified the role of the equities in applying subrogation and the made whole doctrine. The court stated in Vogt v. Schroeder, 129 Wis. 2d 3, 12, 383 N.W.2d 876 (1986), that because subrogation and the made whole doctrine are equitable doctrines, and " [e]quity does not lend itself to the application of black letter rules," the made whole doctrine as set forth in Garrity and Rimes would be applied only when it leads to equitable results.[16]
¶ 85. Relying on this language in Vogt, the majority opinion concludes that even though Dufour has not been made whole for "all elements of damages"— *350 namely his bodily injuries — the made whole doctrine does not apply because "the equities favor Dairy-land . . . ,"[17]
¶ 86. The majority opinion relies on three non-exhaustive equitable principles that may affect sub-rogation:[18] (1) ensuring that the injured person (here Dufour) is fully compensated for the loss; (2) preventing the injured person (here Dufour) from being unjustly enriched; and (3) ensuring that the tortfea-sor is held responsible for his conduct and does not get off scot-free while another, here the injured person's (Dufour's) insurance company (Dairyland), is required to pay for the tortfeasor's conduct.
¶ 87. The majority opinion weighs the equities and permits Dairyland to retain the $15,589.86 it obtained in subrogation from American Standard, the tortfeasor's insurance company.[19]
¶ 88. I also weigh the equities. Applying the three equitable principles set forth by the majority opinion, I conclude that the equities favor Dufour, not Dairyland (see part A below). I also disagree with the majority's reading of the case law (see part B below).
A
¶ 89. The equities favor Dufour, not Dairyland.
¶ 90. In the instant case, Dairyland is competing with Dufour, its insured, for a limited pool of funds. Dairyland and Dufour are competing for the same $15,589.86 that the tortfeasor (through his insurance *351 company, American Standard) was liable for under its policy as a result of the motorcycle accident.
¶ 91. The made whole doctrine is designed to prevent competition between the injured party and his or her insurance company when the injured party's damages exceed the limited pool of funds from which recovery may be had. The case law is clear: When a limited pool of funds is insufficient to make the injured party whole, the loss should be borne by the injured party's insurance company (here, Dairyland).[20]
¶ 92. That the insurance company (here, Dairy-land) bears the loss rather than the insured (here, Dufour) when funds are insufficient to pay the insured's entire damages is referred to as the "recovery priority rule" or the "subrogation rule of priority."[21] The recovery priority rule establishes that Dufour, the injured party, should be the first to tap into the limited pool of funds and recover any uncompensated damages under the made whole doctrine.
¶ 93. In acting on its subrogation rights to seek recovery from the tortfeasor, Dairyland must recognize Dufour's priority over the limited pool of available funds. Because there was an insufficient pool of funds to satisfy Dufour's entire claim, Dufour takes priority over Dairyland in the allocation of these funds; the made whole doctrine applies with full force.[22]
¶ 94. In sum, Dufour is entitled to recover in full any sums payable by the tortfeasor before Dufour's *352 insurance company could exercise any right of subro-gation. "Subrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor." Rimes, 106 Wis. 2d at 272; see also Garrity, 77 Wis. 2d at 542.[23]
¶ 95. I conclude that Dufour, the insured who has not been made whole for his bodily injuries in a settlement with the tortfeasor for the tortfeasor's policy limits, has priority over Dairyland for the $15,589.86 paid by the tortfeasor's insurance company for Dufour's subrogated property damage claim. As a result, Dairyland should not be permitted to keep the $15,589.86.
¶ 96. The three equitable principles outlined in Muller v. Society Ins., 2008 WI 50, ¶ 60, 309 Wis. 2d 410, 750 N.W.2d 1, and set forth by the majority opinion favor Dufour in the instant case. First, Dufour was not fully compensated for his losses. Second, Dufour will not be unjustly enriched if he receives $15,869.86 from Dairyland. There is no double recovery here because Dufour has not been fully compensated for all his losses. Third, the tortfeasor (through his insurance policy) is held responsible for his conduct regardless of whether Dufour or Dairyland retains the *353 $15,589.86. The tortfeasor has paid for the property damage he caused, and the tortfeasor's insurance company is not permitted to retain the funds it owes for Dufour's property damage.
¶ 97. In sum, this case is not a dispute between the tortfeasor and the injured party. The dispute is between Dufour and Dairyland, his insurance company; Dufour and Dairyland are competing for the funds the tortfeasor owes and has paid under his policy.
B
¶ 98. Furthermore, the majority's conclusion favoring Dairyland over Dufour is based on a mistaken reading of Valley Forge Insurance Co. v. Home Mutual Insurance Co., 133 Wis. 2d 364, 396 N.W.2d 348 (Ct. App. 1986).[24]
¶ 99. In Valley Forge, the court of appeals concluded that the equities favored the insured in a fact situation almost identical to that in the instant case.
*354 ¶ 100. The plaintiff in Valley Forge was injured in a car accident.[25] The plaintiffs insurance company, Valley Forge, paid the plaintiff $6,000 for damage to his vehicle.[26]
¶ 101. The plaintiff then entered into a settlement agreement with Home Mutual Insurance Company (the tortfeasor's insurance company), whereby the plaintiff was paid $25,000 for his bodily injuries and $6,000 for property damage to his vehicle.[27] The plaintiff agreed to indemnify Home Mutual against any liability Home Mutual incurred as a result of the settlement.[28] The plaintiffs bodily injuries exceeded the sum that he was paid.[29]
f 102. The plaintiffs insurance company, Valley Forge, asserted subrogation rights to (and requested payment of) the $6,000 from Home Mutual (the tort-feasor's insurance company) to avoid the possibility of a double recovery by the plaintiff.[30]
f 103. The Valley Forge court noted that although it appeared that the plaintiff was receiving a double recovery for his property damage, there was no double recovery because the plaintiff was not made whole for " 'all the elements of damages ....'"[31] According to Valley Forge, being made whole depends on *355 the insured being completely compensated for all types of damages, including bodily injuries and property damage.[32]
¶ 104. Because the plaintiff had not been made whole for " 'all the elements of damages ... " his recovery of available subrogated property damage funds was not an impermissible double recovery.[33]
¶ 105. Valley Forge follows long-settled Wisconsin law that, as a general rule, the subrogor (that is, the injured insured) must be made whole before the subrogee (that is, the injured insured's insurance company) may recover anything from the tortfeasor.[34]
¶ 106. Relying on Vogt's pronouncement that subrogation is an equitable doctrine that " 'depends upon a just resolution of a dispute under a particular set of facts,' " the court of appeals held that Valley Forge was not entitled to subrogation because the tortfeasor and Valley Forge together paid the plaintiff less than the total loss the plaintiff suffered.[35]
¶ 107. Valley Forge concluded, as had previous cases, that where either the insurance company or the injured insured has to suffer a loss, the loss should fall on the insurance company.[36]
¶ 108. The majority opinion expresses "serious concerns about the court of appeals decision in Valley Forge and caution [s] against its use . . . ."[37] Neverthe *356 less, the majority opinion declines to overrule Valley Forge. Instead it distinguishes Valley Forge based on an overly narrow reading of the facts and longstanding case law.[38]
f 109. I am not persuaded by the majority opinion's reading of Valley Forge. As the court of appeals recognized in the instant case, "the facts before us. here, for all relevant purposes, are identical to those in Valley Forge . . . ,"[39]
¶ 110. In both Valley Forge and in the instant case the issue is the same: Do funds obtained from the tortfeasor's insurance company belong to the injured insured or to the insured's insurance company when the insured has not been made whole for all the elements of damages suffered? At its core, the question in both Valley Forge and the instant case is who ought to receive funds that are paid on behalf of the tortfeasor: the injured person who has not been fully compensated for all his losses, or his insurance company?
¶ 111. Valley Forge is applicable to the instant case because it addresses who is entitled to the limited pool of funds by applying the equitable subrogation and made whole doctrines.
¶ 112. Paulson v. Allstate Insurance Co., 2003 WI 99, ¶ 25, 263 Wis. 2d 520, 665 N.W.2d 744, confirmed that Valley Forge was an example of impermissible competition between the insurer and insured for a limited pool of funds: "In Valley Forge . . . the court of appeals held that a victim's insurer was not entitled to subrogation where the victim recovered less than his *357 total loss. Again, the situation was one of the insurer competing with the insured for funds."
¶ 113. In Valley Forge, the insured was in possession of the funds furnished by the tortfeasor's insurance company for property damage; in the instant case, Dairyland is in possession of the funds furnished by the tortfeasor's insurance company for property damage.
¶ 114. The Valley Forge decision is not contingent on who possesses the limited pool of funds, but rather who is entitled to the funds.
¶ 115. As in Valley Forge, the insured and the insurance company in the instant case are fighting over a limited pool of money owed and supplied by the tortfeasor's insurance company. By relying on the factual difference in the two cases regarding possession of the pool of funds, the majority opinion elevates form over substance.
¶ 116. The majority opinion attempts to distinguish Valley Forge by maintaining that, unlike the plaintiff in Valley Forge, Dufour had no access to any additional funds from either insurance company "but for Dairyland's subrogation action against the tortfea-sor's insurer .... Consequently, allowing Dairyland to seek and obtain subrogation had no effect on Dufour's recovery."[40] But Dairyland did assert its subrogation rights, American Standard paid the sum its insured (the tortfeasor) owed Dufour, and the issue is who is entitled to these funds.
¶ 117. The majority does not explain how, if Dufour had no right to seek funds for property damage from the tortfeasor's insurance company, Dairy-land could seek such funds from the tortfeasor's *358 insurance company. After all, "subrogation confers no greater rights on the subrogee [Dairyland] than the subrogor [Dufour] had at the time of the subrogation .... Thus, where one acquires a right by subro-gation, that right is not a separate cause of action from the right held by the subrogor . . . . ' [I] t is better to think of the insurer as an assignee of part of the claim.'"[41]
¶ 118. In the instant case, Dufour's acceptance of payment for property damage from Dairyland does not operate as an assignment to Dairyland of Dufour's claim for property damage against the tortfeasor. When the injured party has not been made whole, the made whole doctrine trumps any assignment based on the doctrine of subrogation.[42] We stated this principle in Muller v. Society Insurance, 2008 WI 50, ¶ 29, 309 Wis. 2d 410, 750 N.W.2d 1, as follows (citation and internal quotation marks omitted):
The cause of action against the tortfeasor is viewed as an indivisible claim, and the plaintiff [here, Dufour] holds this claim until he is given the opportunity to fully recover his loss. Logically, this principle establishes the insured's priority over his insurer [here, Dairyland] in pursuing recovery, and the general rule [is] that there is no subrogation until the insured has been made whole.[43]
*359 ¶ 119. Dairyland asserts that allowing Dufour to retain the $15,589.86 amounts to rewriting the insurance policy to provide for a combined single coverage limit to make up for inadequate bodily injury coverage. This argument has superficial appeal but on analysis is not convincing.
¶ 120. The insured's policy is not being rewritten. No combined single limit is imposed on Dairyland. Nothing about the instant case requires that insurance funds covering one type of loss {e.g., property damage) be paid for another type of loss {e.g., personal injury). Rather, the instant case involves subrogation and the made whole doctrine and the application of equitable principles.
¶ 121. The majority opinion suggests that "the made whole doctrine ... is inapplicable if the claim is 'brought by a subrogated insurer against the tortfeasor or the tortfeasor's insurer where the subrogated insurer's insured has previously settled with the tortfea-sor.' "[44]
¶ 122. This suggestion was repudiated in Schulte v. Franzin, 176 Wis. 2d 622, 635-36, 500 N.W.2d 305 (1993).
*360 ¶ 123. Schulte concluded that when an injured insured settles with the tortfeasor and the tortfea-sor's insurance company without resolving the subro-gated insurance company's part of the claim, the subrogated insurance company's rights of subrogation depend on whether the settlement made the insured whole.[45] If the settlement does not make the insured whole, the subrogated insurance company has no right of subrogation.[46]
¶ 124. I agree with the simple, clear implication of Rimes, Garrity, Vogt, and Valley Forge: " [W]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume."[47]
¶ 125. In sum, the well-accepted principles, including equitable principles, relating to subrogation and the made whole doctrine weigh in favor of Dufour, not Dairyland. A ruling in Dufour's favor:
• Protects and defends the right of the insured injured person to be made whole;
• Preserves the limitations on subrogation imposed by the made whole doctrine by not allowing subrogation for "discrete" coverages;
• Reaffirms the equitable principle that if someone must suffer a loss, it should be the insurance company, not the injured insured;
• Avoids a double recovery or windfall because the insured has not been made whole for the full extent of his or her losses; and
*361 • Ensures that an insurance company does not inequitably compete with its insured for a limited pool of funds insufficient to make the insured whole for the losses caused by the tortfea-sor.
¶ 126. Unfortunately, the majority opinion shifts away from the compensatory purpose of the made whole doctrine and instead protects the financial interests of the insurance company to the detriment of its insured who paid the premiums.
¶ 127. Valley Forge is not distinguishable on its facts, is consistent with longstanding case law, does not rewrite Dairyland's policy, and correctly rules on equitable principles. Accordingly, I would follow Valley Forge, as did the court of appeals.
h-1 I — I
¶ 128. I concur in part because I agree with the majority opinion's conclusion that Dairyland, Dufour's insurance company, did not act in bad faith when it denied Dufour's claim. Dairyland had a reasonable basis "to conclude that [its insured's] claim is fairly debatable and that therefore payment need not be made on the claim."[48] The "fairly debatable" standard is an objective test that asks whether a reasonable insurance company under similar circumstances would have denied payment on the claim.[49] I conclude that Dairyland has met this objective test by putting forward non-frivolous arguments in favor of its view that Dufour's claim was fairly debatable.
*362 f 129. For the reasons set forth, I dissent in part, concur in part, and write separately.
¶ 130. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Muller v. Society Ins., 2008 WI 50, ¶ 22, 309 Wis. 2d 410, 750 N.W.2d 1; see also Garrity v. Rural Mut. Ins. Co., 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977) ("Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer.") (citations omitted).
The subrogation provision in Dairyland's policy states: "After we have made payment under this policy and, where allowed by law, we have the right to recover the payment from anyone who may be held responsible." Majority op., ¶ 7.

 Muller, 309 Wis. 2d 410, ¶ 25.

 Garrity, 77 Wis. 2d at 542.

 Schulte v. Franzin, 176 Wis. 2d 622, 625, 500 N.W.2d 305 (1993).
See Petta v. ABC Ins. Co., 2005 WI 18, ¶ 38, 278 Wis. 2d 251, 692 N.W.2d 639 ("Outside of situations where a person has a competing claim with a subrogated insurer, the equities will vary dramatically.").

 Rimes v. State Farm Mut. Auto. Ins. Co., 106 Wis. 2d 263, 276, 316 N.W.2d 348 (1982) (quoting Garrity, 77 Wis. 2d at 542).

 Fischer v. Steffen, 2011 WI 34, ¶ 34, 333 Wis. 2d 503, 797 N.W.2d 501.

 An article refers to the three parties involved in subro-gation and the made whole doctrine as follows: The tortfeasor is referred to as the "loss-causer"; the injured party is referred to as the "loss-victim"; and the loss-victim's insurance company is referred to as the "loss-insurer." See Brendan S. Maher & Radha A. Pathak, Understanding and Problematizing Contractual Tort Subrogation, 40 Loy. U. Chi. L.J. 49, 50 (2008). Although I do not use this terminology, I find it descriptive and helpful.

 Vogt v. Schroeder, 129 Wis. 2d 3, 14, 383 N.W.2d 876 (1986).

 Schulte, 176 Wis. 2d at 633.

 Johnny C. Parker, The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation, 70 Mo. L. Rev. 723, 771 (2005).

 See Donald H. Piper & Terry J. Booth, Subrogation, in 3 The Law of Damages in Wisconsin § 32.22 (Russell Ware ed., 6th ed. 2016) (stating that the scope of the made whole doctrine "is not currently well defined" in Wisconsin); John J. Kircher, Insurer Subrogation in Wisconsin: The Good Hands (Or a Neighbor) In Another's Shoes, 71 Marq. L. Rev. 33, 72 (1987) (noting that although " [m]uch water has passed over, under, around and through the judicial dam since the supreme court articulated the first principle affecting insurer subrogation in Wisconsin," " [c]larity has not always been the product of the courts' decisions."); see also Jeffrey A. Greenblatt, Comment, Insurance and Subrogation: When the Pie Isn't Big Enough, Who Eats Last?, 64 U. Chi. L. Rev. 1337, 1345, 1360 (1997) (discussing the "messy difficulties of applying the made-whole doctrine," and suggesting that" [e]ven defining the term 'made whole' is difficult.").
For discussions of subrogation and the made whole doctrine, see, e.g., 4 New Appleman Law of Liability Insurance ch. 42 (Matthew Bender rev. ed., 2d ed. 2015); 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d, chs. 222-226 (2005); II Arnold P. Anderson, Wisconsin Insurance Law ch. 10 (7th ed. 2015); 3 The Law of Damages in Wisconsin, ch. 32 (Russell Ware ed., 6th ed. 2016); Maher & Pathak, supra note 7; Parker, supra note 7; Greenblatt, supra, at 1345, 1360; Kircher, supra, at 72; Matthiesen, Wickert & Lehrer, S.C., Made Whole Doctrine in All 50 States, https ://www.mwl-law.com/wp-content/uploads/2013/03/made-whole-doctrine-in-all-50-states.pdf (last updated Feb. 5, 2016)

 See Brown v. LIRC, 2003 WI 142, ¶ 24, 267 Wis. 2d 31, 671 N.W.2d 279.

 Garrity, 77 Wis. 2d at 542.

 The cause of action against a tortfeasor is indivisible. Muller, 309 Wis. 2d 410 (citing Garrity, 77 Wis. 2d at 542); see also Caygill v. Ipsen, 27 Wis. 2d 578, 582-83, 135 N.W.2d 284 (1965).

 Rimes, 106 Wis. 2d at 275 (quoted with approval in Schulte, 176 Wis. 2d at 628).

 See Muller, 309 Wis. 2d 410, ¶ 44 (" 'Hence, only under fact situations where an equitable result will follow should the statements quoted above [e.g., 'the conventionally subrogated or contractual insurer has no share in the recovery from the tort-feasor if the total amount recovered by the insured from the insurer does not cover his loss', Garrity, 77 Wis. 2d at 544] be applied literally.'") (quoting Vogt, 129 Wis. 2d at 12) (alteration in original) (emphasis omitted).

 See majority op., ¶ 4.

 See majority op., ¶ 18 (quoting Muller, 309 Wis. 2d 410, ¶ 60).

 See majority op., f 56.

 See Muller, 309 Wis. 2d 410, ¶¶ 27-44; Rimes, 106 Wis. 2d at 275-76; Garrity, 77 Wis. 2d at 542.

 This principle was established by Garrity, 77 Wis. 2d at 542-43, and is repeated in Muller, 309 Wis. 2d 410, ¶¶ 28-32.

 Muller, 2008 WI 50, ¶ 72, 309 Wis. 2d 410, 750 N.W.2d 1.

 See Paulson v. Allstate Ins. Co., 2003 WI 99, ¶ 27 & n.3, 263 Wis. 2d 520, 665 N.W.2d 744 (Rimes and Garrity apply when the "pie" is not big enough to completely satisfy the claims of both the injured insured and its insurance company); Drinkwater v. Am. Family Mut. Ins. Co., 2006 WI 56, ¶¶ 16-23, 290 Wis. 2d 642, 714 N.W.2d 568 ("Subrogation under circumstances where the insured had not been made whole 'tum[s] the entire doctrine of subrogation in its head.'") (citing Ruckel v. Gassner, 2002 WI 67, ¶ 41, 253 Wis. 2d 280, 646 N.W.2d 11).

 The majority opinion uses sentences from cases taken out of context and, in my view, misreads several cases. I do not point out each problem in the majority opinion. See, for example, the majority opinion's discussion (at ¶¶ 32-33) of Mutual Service Casualty Co. v. American Family Insurance Group, 140 Wis. 2d 555, 561, 410 N.W.2d 582 (1987). Mutual Service was narrowed by Schulte, 176 Wis. 2d at 635-36. Indeed, Justice Steinmetz's dissent in Schulte objected to the decision on the grounds that it "improperly violate[d] the doctrine of stare decisis by rejecting the result and some of the reasoning in . . . Mutual Service .. . .").

 Valley Forge Ins. Co. v. Home Mut. Ins. Co., 133 Wis. 2d 364, 366, 396 N.W.2d 348 (Ct. App. 1986).

 Valley Forge, 133 Wis. 2d at 366.

 Valley Forge, 133 Wis. 2d at 366.

 Valley Forge, 133 Wis. 2d at 367.

 Valley Forge, 133 Wis. 2d at 367.

 Valley Forge, 133 Wis. 2d at 366.

 Valley Forge, 133 Wis. 2d at 368 (quoting Rimes, 106 Wis. 2d at 275).

 See Valley Forge, 133 Wis. 2d at 368-69.

 Valley Forge, 133 Wis. 2d at 368 (quoting Rimes, 106 Wis. 2d at 275).

 Garrity, 77 Wis. 2d at 541; Rimes, 106 Wis. 2d at 272-73.

 Valley Forge, 133 Wis. 2d at 369 (quoting Vogt, 129 Wis. 2d at 12).

 See Valley Forge, 133 Wis. 2d at 368.

 Majority op., ¶ 52.

 Majority op., ¶ 52.

 Dufour v. Progressive Classic Ins. Co., No. 2014AP157, unpublished slip op., ¶ 26 (Wis. Ct. App. July 16, 2015).

 Majority op., ¶ 50.

 Wilmot v. Racine Cnty., 136 Wis. 2d 57, 63-64, 400 N.W.2d 917 (1987) (citation omitted) (quoting Heifetz v. Johnson, 61 Wis. 2d 111, 120, 211 N.W.2d 834 (1973)); see also Ruckel v. Gassner, 2002 WI 67, ¶ 27, 253 Wis. 2d 280, 646 N.W.2d 11 (" [U]nder basic principles of subrogation . . . , the insurer is not entitled to recoup anything until the insured has been made whole.") (citing Garrity, 77 Wis. 2d at 543-44).

 Schulte, 176 Wis. 2d at 637.

 In Muller, the tortfeasor's insurance liability was sufficient to cover all the property losses sustained by the insured *359 and the insured's insurance carrier. Muller, 309 Wis. 2d 410, ¶ 4. The court therefore held that the made whole doctrine did not apply even though the insured settled for less than full losses. Muller, 309 Wis. 2d 410, ¶ 4.
The Muller court, however, preserved the rule that when the funds are limited, the insured is entitled to be made whole. See Muller, 309 Wis. 2d 410, ¶ 72.
Subrogation is not permitted in the instant case because unlike in Muller, the injured party, Dufour, exhausted all of the available insurance limits without being made whole.

 Majority op., ¶ 32 (quoting Mut. Serv. Cas. Co. v. Am. Family Ins. Grp., 140 Wis. 2d 555, 563-64, 410 N.W.2d 582 (1987).

 Schulte, 176 Wis. 2d at 637.

 Schulte, 176 Wis. 2d at 637.

 Garrity, 77 Wis. 2d at 542.

 See Brown, 267 Wis. 2d 31, ¶ 24.

 See Brown, 267 Wis. 2d 31, ¶ 24.